GLOVER *v.* STATE OF INDIANA.

[No. 567S7. Filed February 26, 1970. No petition for rehearing filed.]

*Robert G. Mann, Bolden and Mann,* Indianapolis, for appellant.

*John J. Dillon,* Attorney General, *Duejean C. Garrett,* Deputy Attorney General, for appellee.

DeBruler, J.—This is an appeal from a conviction for second degree murder in a trial by jury in Marion County Criminal Court, No. 2. Appellant was sentenced to life imprisonment.

Appellant's first allegation of error is that there was insufficient evidence to sustain the verdict of guilty. In reviewing this allegation we do not weigh the evidence nor resolve questions of credibility, but we look to that evidence and the reasonable inferences therefrom which support the verdict. Of course, we exclude from consideration any evidence that was introduced to impeach the credibility of a witness. Such evidence is not substantive evidence. *McAdams* v. *State* (1948), 226 Ind. 403, 81 N. E. 2d 671. The conviction will be affirmed if from that viewpoint there is evidence of probative value from which a reasonable trier of fact could infer that appellant was guilty beyond a reasonable doubt. *Fair* v. *State* (1969), 252 Ind. 494, 250 N. E. 2d 744.

The evidence showed that at approximately 1:45 A.M., October 9, 1966, the dead body of one, Harlen Henson, a twenty-one year old United States soldier, was found near some trash barrels at the rear of Segal's Tavern, 2136 W. Morris Street, located on the northeast corner of West Morris and North Sheffield Streets in Indianapolis, Indiana.

Dr. Robert C. Ransburg, a deputy coroner for Marion County, testified that the victim Henson, died from a stab wound severing his aorta. He further testified that it appeared that the body had been drug over to the trash barrels.

This conclusion was due to certain lacerations on the body, the presence of dirt and grass on the body and the disheveled nature of the victim's clothing.

The appellant, his brother Danny Glover, and his brother's fiance Julie Overton, age eighteen years, went to Segal's Tavern at about midnight October 8, 1966, after having a few drinks at another nightspot earlier in the evening.

At Segal's Tavern they were in the company of appellant's mother and aunt. The witness, Julie Overton, testified that she left the premises to call a cab approximately an hour and a half after their arrival. She went to a public phone booth on Morris Street just east of the parking lot on the east side of the tavern. Before Julie Overton could complete her call appellant approached her and asked her not to take a cab home. She then left the phone booth with him. At this time two men approached, one of them the victim, Harlen Henson. The two men evidently told appellant to leave her alone and according to the witness, they were "roughing up" the appellant when his brother came out and struck Henson. At this time a police car arrived at the scene. It appears that at the sight of the police car everyone fled with exception of the appellant's brother and Julie Overton. The police advised the pair to go on home and when the police car left they began walking through the parking lot on the east and north sides of the tavern to their car parked on Sheffield Street.

While crossing the parking lot behind the tavern, Danny Glover and Julie Overton were joined by the appellant, his mother and aunt. After a few minutes appellant left the group and went back towards the west side of the tavern, while the other four crossed the street to their car parked on the west side of Sheffield Street. Before witness Overton got in the car she noticed two people fighting by the west side of the tavern about forty feet away. This lasted a few minutes and she got in the car. She then noticed someone dragging something to the trash barrels behind the tavern. The witness

testified that it was dark and she could not identify the appellant as one of the persons involved in the fight.

Apparently, witness Overton's mother called the police that morning sometime after arriving home. The content of this call was undisclosed.

One of the arresting officers testified that certain undisclosed information had been developed which led him to believe that defendant Glover might be subject to arrest for the murder of Harlen Henson.

The officers arrived at the house wherein they found the defendant at approximately 5:40 A.M. on October 9th. After knocking and receiving no response the officers broke in the front door. They found the defendant sleeping in a chair in the front room. The officers then placed the defendant under arrest. At the time a search of defendant's person revealed a stiletto knife which he was carrying in one of his pockets. However, this knife was never introduced into evidence nor was any evidence offered that in any way connected it with the crime. Another knife commonly called a steak knife was found behind the tavern but there was no testimony connecting it with the stabbing. One employee of the tavern testified that it was not the type of knife used in the tavern. There was no evidence that either knife was even examined for bloodstains or fingerprints.

We believe there is no evidence here from which a reasonable jury could infer that appellant stabbed Harlen Henson. The most that is shown is that appellant was in the general area when the killing occurred at about the time the killing occurred. However, this was on a public sidewalk running alongside a crowded tavern about fifteen minutes prior to closing time. This was also a natural route to the parking lot in the rear of the tavern. Showing mere opportunity to commit the crime is not sufficient. Neither of the knives flourished by the appellee at the trial were in any way connected with the crime. The appellee did not see fit to

question Danny Glover, his mother, or aunt about the events of that night and all three had as good an opportunity to witness what happened at the side of the tavern as Julie Overton. The sole evidence connecting appellant with the crime is the existence of a possible motive due to the previous scuffle, and his presence in the general vicinity when the crime took place. This is not sufficient.

Judgment reversed and the trial court is ordered to grant appellant's motion for new trial.

Hunter, C.J., concurs; Jackson, J., concurs in result; Givan, J., dissents with opinion in which Arterburn, J., concurs.

### DISSENTING OPINION

GIVAN, J.—I respectfully dissent from the majority opinion. The evidence in this case is sufficient to permit the jury to draw a reasonable inference that the appellant was the one who had killed the decedent. There was evidence that they had just had an argument leading to a fight, which was broken up by the appearance of a police car.

A few minutes before the decedent was fatally wounded the appellant was seen walking toward the location of the fatal injury. The witness, Julie Overton, testified that she saw two persons fighting in this area and then saw one person dragging an object over by some trash cans. The jury was fully within their province in weighing the evidence to determine that it was the appellant who was seen dragging an object and that that object was the body of the decedent. It was also within the province of the jury to believe that beyond a reasonable doubt it was the appellant who had inflicted the fatal injury. This Court has previously held that a conviction may rest upon reasonable inference to be drawn from the evidence. *Shutt v. State* (1954), 233 Ind. 169, 117 N. E. 2d 892.

The majority opinion does not mention the fact that the witness, Julie Overton, although failing to positively identify the appellant as the assailant at his trial had so identified him

in her testimony before the grand jury. This evidence was admitted at the trial for the purpose of impeaching her testimony. It was within the province of the jury to believe as they apparently did that for reasons either of intimidation or friendship Julie Overton was deliberately withholding positive identification of the appellant at the time of the trial. I believe a reversal of this case by this Court is weighing of the evidence, which invades the province of the trial jury.

I would, therefore, affirm the conviction.

Arterburn, J., concurs.

NOTE.—Reported in 255 N. E. 2d 657.