GEORGE HALL *v*. STATE OF INDIANA.

[No. 877S624. Filed July 24, 1978.]

*Michael T. Conway,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Elmer Lloyd Whitmer,* Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant) was charged by indictment with First Degree Murder, Ind. Code § 35-13-4-1 (Burns 1975), and with Carrying a Handgun Without a License, Ind. Code §§ 35-23-4.1-3, 35-23-4.1-18 (Burns 1975). Following a trial by jury, he was found guilty of Second Degree Murder, Ind. Code § 35-1-54-1 (Burns 1975), for which he was sentenced to not less than fifteen nor more than twenty-five years imprisonment. He was also found guilty of the firearms violation as charged, for which he was sentenced to six months imprisonment and fined five hundred dollars. This direct appeal presents the following issues:

(1) Whether the trial court erred by denying Defendant's motion for a directed verdict of acquittal following the close of the State's case.

(2) Whether there was sufficient evidence of guilt to sustain the jury's verdict.

(3) Whether certain photographic evidence was erroneously admitted.

(4) Whether it was error to deny Defendant's motion for a mistrial.

(5) Whether the trial court committed error by denying Defendant's motion to suppress certain identification evidence.

(6) Whether it was error to admit testimony concerning a weapon not in evidence.

## ISSUE I

Following the State's case in chief, Defendant moved for a directed verdict of acquittal upon the grounds that the State failed to prove (1) venue of the crime, (2) premeditated malice, and (3) identity of the defendant as the perpetrator of the crime. The motion was denied, and evidence for the defense was presented.

If any error was committed by the court's denial of Defendant's motion for a directed verdict of acquittal following the State's case in chief, that error was waived by the subsequent introduction of evidence by the defendant. *Parker* v. *State*, (1976), 265 Ind. 595, 358 N.E.2d 110; *Ward* v. *State*, (1964) 246 Ind. 374, 205 N.E.2d 148.

## ISSUE II

Defendant argues that the evidence of guilt is not sufficient to sustain the jury's verdict in that the State failed to prove (1) malice, (2) identity of the defendant as the perpetrator of the murder, or (3) cause of the decedent's death. Upon a review of the evidence, this Court will look only to the evidence favorable to the State, along with all reasonable inferences to be drawn therefrom. *Baum* v. *State*, (1976) 264 Ind. 421, 345 N.E.2d 831. We will not weigh the evidence or judge the credibility of the witnesses. *Rosell* v. *State*, (1976) 265 Ind. 173, 352 N.E.2d 750. The verdict will not be disturbed if it is supported by substantial evidence of probative value. *Baum* v. *State, supra.*

Looking to the evidence most favorable to the State, it appears that on December 7, 1974, the defendant walked into Robby's Lounge in Indianapolis, Indiana. The owner of the lounge was stationed by the entrance to collect the cover charge. The defendant told her that he wanted only to use the restroom, so she allowed the defendant to enter.

Witness, Williams, testified that the defendant offered to sell a nickle plated handgun to him while they were both in the lounge's restroom, but he refused to buy it. As Williams left the restroom, the defendant followed him out. Williams approached the deceased at the bar. As Williams was talking to the deceased, the deceased called him a "jitterbug punk," and pushed him away. Someone standing behind Williams then shot the deceased.

Robinson, the owner of the Lounge, testified that after the defendant had been admitted without paying the cover charge, she saw him talking to two men by the restroom. She asked them to clear the doorway, and they moved to stools at the bar. Robinson looked again and saw the defendant draw a handgun and fire it at the deceased. She started to follow the defendant as he walked away. Defendant turned to face her, pointed a gun at her, and told her to stay out of it.

The Supervisor of the Firearms Licensing Section of the Indiana State Police testified that following a search of her files, she discovered that the defendant did not have a license to carry a firearm in the State of Indiana on December 7, 1974.

In order to establish the elements of second degree murder, the State must prove that the defendant purposely and maliciously killed a human being. *Blackburn* v. *State*, (1973) 260 Ind. 5, 291 N.E.2d 686. The evidence disclosed that the defendant deliberately drew a handgun from within his coat, pointed it at the deceased and fired. There was no evidence that the deceased had offered any provocation. Malice and purpose may reasonably be inferred from the deliberate use of a deadly weapon in a manner that is

likely to cause death or great bodily harm, if it is done without sufficient provocation. *Horton* v. *State,* (1976) 265 Ind. 393, 354 N.E.2d 242; *White* v. *State,* (1976) 265 Ind. 32, 349 N.E.2d 156. There was substantial evidence of probative value to support a finding that the defendant acted with purpose and malice.

Defendant further argues that there was no *credible* evidence to identify him as the assailant. Both Robinson and Williams identified the defendant as being present at the scene and in possession of a handgun. Robinson unequivocally identified the defendant as the individual who fired the fatal shot. This is substantial evidence of probative value which was accepted as credible by the jury. On questions concerning the credibility of witnesses, this Court will not substitute its judgment for the judgment of the jury. *Rosell* v. *State, supra.*

Defendant finally argues that the State failed to prove that the deceased was killed by a bullet wound. The examining physician prepared the Coroner's Report in which he described the physical condition of the deceased's body, and stated his opinion that the cause of death was a gunshot wound to the chest. This report was admitted into evidence. Furthermore, the jury could reasonably infer the cause of death from circumstantial evidence presented at trial. The deceased was shot and wounded, he slumped to the floor, and he was dead by the time an ambulance delivered him to the hospital. The cause of death may be proved by evidence other than medical testimony. *Sexton* v. *State,* (1974) 262 Ind. 554, 319 N.E.2d 829.

## ISSUE III

Defendant objected to the admission of three photographs depicting the interior of Robby's Lounge and two photographs which portrayed him in a seven-man lineup. The grounds for the objections went only to the proper order of proof. At the time the photographs were admitted, there had not yet been

evidence that a crime had been committed, nor evidence to connect the photographs to the defendant.

Defendant acknowledges the general rule in Indiana that evidence introduced out of its proper order is usually not prejudicial. *Thomas* v. *State*, (1975) 262 Ind. 590, 321 N.E.2d 194; *Williams* v. *State*, (1973) 260 Ind. 237, 294 N.E.2d 793; *Dixon* v. *State*, (1945) 223 Ind. 521, 62 N.E.2d 629. And, if it appears that evidence was admitted out of its proper order, the technical error may be rendered harmless by the introduction of subsequent evidence.

Following the admission of the photographs, evidence was presented to show that the crime had occurred at Robby's Lounge, rendering the photographs of the Lounge relevant as contextual to subsequent testimony. If the photographs were introduced out of the preferred order, the error was, nevertheless, harmless.

ISSUE IV

At one point Defendant's brother, Samuel Hall, had also been a suspect in the murder investigation. During the course of trial, the following dialogue occurred between the prosecutor and an investigating police officer.

"State: "Okay, after you had this discussion with Samuel Hall, what did you do next in your investigation of the murder of Allen F. Lee?

"Witness: I placed Samuel Hall under arrest for first degree murder.

"State: In your further investigation, what happened?

"Witness: We had an anonymous — several anonymous telephone calls . . . ."

Defendant objected at this point and moved for a mistrial, which motion was denied. The court admonished the jury not to consider the witness' last answer, and proceeded with the trial. Defendant now argues that the trial court committed error by not granting a mistrial, claiming that the mention of anonymous telephone calls was an "evidentiary harpoon."

The denial of a mistrial is generally within the sound discretion of the trial court. *Dewey* v. *State,* (1976) 264 Ind. 403, 345 N.E.2d 842. Since the substance of the anonymous telephone calls was not disclosed to the jury, an admonishment to disregard the answer was sufficient to dissipate any prejudice which might have resulted from the mere mentioning of them.

## ISSUE V

Mark Williams identified the defendant as the individual who approached him in the restroom of Robby's Lounge and offered to sell a handgun. Immediately prior to trial, Williams had been shown a photograph of a seven-man lineup which portrayed the defendant. However, the police officer who had shown the photograph to Williams, at the prosecutor's direction, had not indicated which of the seven men in the lineup was the defendant.

Defendant objected to the identification evidence supplied by Williams upon the ground that it was tainted by the unnecessarily suggestive display to the witness. The motion was overruled.

The primary question concerning the admission of pre-trial identifications and in-trial identifications which are potentially tainted by improperly conducted pre-trial identification procedures, is whether the pre-trial identification procedure was unnecessarily suggestive. *Zion* v. *State,* (1977) 266 Ind. 563, 365 N.E.2d 766; *Cooper* v. *State,* (1977) 265 Ind. 700, 359 N.E.2d 532; *Norris* v. *State,* (1976) 265 Ind. 508, 356 N.E.2d 204. The suggestiveness of an identification procedure may be determined by the degree to which the circumstances of the procedure and the actions of the police indicate to the witness which suspect to "identify." *Parker* v. *State,* (1970) 254 Ind. 593, 261 N.E.2d 562.

Here, however, the police had not indicated to the witness which of the seven men in the photograph was the defendant. Rather he had displayed the photograph to the witness as a

test to determine if he could identify the defendant prior to offering him as a witness. The procedure was not suggestive and could not have tainted the in-trial identification.

## ISSUE VI

Paul Koss, a State's weapons expert, testified that the bullet recovered from the deceased's body was *not* fired from a certain pistol which had been given to him for comparison purposes. Koss was asked where he had obtained the gun and to whom it belonged; but Defendant objected and the objection was sustained. Defendant thereafter objected to Koss's testimony upon the ground that it concerned a gun which had not been introduced into evidence.

In *Pulliam* v. *State*, (1976) 264 Ind. 381, 345 N.E.2d 229, this Court stated:

"There is no law to support the proposition that a failure to introduce into evidence a physical object about which there has been testimony is fatal and that all testimony regarding the physical object must go out." 264 Ind. at 390.

Additionally, we can perceive no harm from evidence that the fatal shot was not fired from any particular gun, although such evidence appears to have no relevance.

We find no reversible error. The judgment of the trial court is affirmed.

Givan, C.J. and DeBruler, Hunter and Pivarnik, JJ. concur.

NOTE.—Reported at 378 N.E.2d 823.