**Sherman HICKS, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 479S109.

Supreme Court of Indiana.

March 25, 1980.

Jerry E. Levendoski, Fort Wayne, for appellant.

Theo. L. Sendak, Atty. Gen., Cindy A. Ellis, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Appellant, Sherman Hicks, was convicted by a jury of murder, Ind.Code § 35–42–1–1(1), in the shooting death of Harold Brewer and sentenced to prison for a period of forty years. He appeals contesting the sufficiency of evidence of guilt. In determining the question presented we do not weigh the evidence nor resolve questions of credibility but look to the evidence and reasonable inferences therefrom which support the verdict. *Smith v. State,* (1970) 254 Ind. 401, 260 N.E.2d 558. The conviction will be affirmed if from that viewpoint there is evidence of probative value from which a reasonable trier of fact could infer that appellant was guilty beyond a reasonable doubt. *Glover v. State,* (1970) 253 Ind. 536, 255 N.E.2d 657; *Taylor v. State,* (1973) 260 Ind. 64, 291 N.E.2d 890; *Turner v. State,* (1972) 259 Ind. 344, 287 N.E.2d 339.

It is appellant's specific contention that the evidence showed no more than that

appellant had had an opportunity to commit the crime charged and as such was too speculative in nature to warrant conviction. In *Glover v. State, supra,* this Court reversed a murder conviction because the sole evidence connecting Glover with the crime was "the existence of a possible motive due to the previous scuffle, and his presence in the general vicinity when the crime took place." 253 Ind. at 540, 255 N.E.2d at 659. In that case a soldier was stabbed to death in a struggle outside a tavern in the early morning hours. In *Osbon v. State,* (1938) 213 Ind. 413, 13 N.E.2d 223, this Court reversed another murder conviction where the evidence showed only that Osbon and his wife had had the opportunity to administer poison to the victim when they served him a bowl of vegetable soup at lunch prior to his death in the afternoon. There was no evidence that the soup contained the strychnine, or that the Osbons had purchased or possessed strychnine, or that they had motive to kill the victim. The Court observed:

"It is true that the Osbons were the last persons with Kenneth before his fatal sickness, they had the opportunity to administer poison, but the law surely exacts something more than a mere opportunity to murder before a person's life or freedom may be taken away. If mere opportunity to murder is sufficient to convict then the life and liberty of many innocent people may be easily sacrificed. The law requires more than mere opportunity. It requires evidence to prove guilt beyond a reasonable doubt." 213 Ind. at 424, 13 N.E.2d at 227–228.

We first view the testimony of the witnesses in a manner favorable to the result reached by the jury. Joe Willie Day, age seventy, lived on the first floor of 1705 East Wayne Street in Fort Wayne, Indiana on January 12, 1978, a snowy day. The victim Harold Brewer lived above him on the second floor. Day testified that it was after 5:00 in the afternoon when appellant knocked on his door and asked to wait inside until Harold Brewer came home. Day permitted appellant to come inside. Brewer arrived at his upstairs apartment within a few minutes.

Referring to appellant and events which then followed the witness Day testified:

"[H]e gets up to go up there and he go out the door. . . ."

The witness went to his kitchen to finish washing out his clothes and while there he heard a thump like a gas stove exploding. He then heard someone walking toward the front door upstairs, so he proceeded to the window to look out.

Referring to appellant the witness testified:

"I seen this man coming down the steps with that gun wrapped up in something or other. . . .

\* \* \* \* \* \*

The barrel was showing enough that I could tell it was a gun."

Referring again to appellant the witness testified:

And so he goes back there and hides that gun, and after he got that gun hid, he runs across the street and tells Mrs. Brewer somebody had shot her son."

And when asked whether anybody else had been up in the Brewer apartment at the time the witness responded:

"Nobody."

Shortly after these events described by the witness Day the police arrived. Brewer was found dead in his apartment, having been shot twice with a shotgun, once near the abdomen and once in the back of the head. Day directed the officers to tracks in the snow which he said would lead them to the gun which appellant had hidden. They followed the tracks and found a .20 gauge Mossberg shotgun and two spent shells covered with snow and leaves that had been recently disturbed.

Mrs. Brewer, the mother of the victim, testified that appellant came to her house across the street and told her that her son Harold had been shot.

Other witnesses testified that appellant made threats against Brewer on the day before the shooting. There was a dispute between the two men.

Upon a careful study of the evidence, we are satisfied that it was sufficient to support the verdict of the jury.

Appellant and the victim had had a dispute and appellant had expressed a desire to do harm to the victim. He visited the victim's apartment. The victim was alone in his apartment and alive at the time. A loud explosion was then heard. Brewer was shot twice. Appellant was observed leaving the apartment moments later with a gun in hand with two spent shells which he then sought to hide. His conduct tended to show a knowledge of the shooting and a consciousness of wrong doing. A reasonable trier of fact could infer that the gun he carried was the murder weapon. Here, unlike the circumstances in *Glover* and *Osbon* the means by which death was inflicted was placed in the hands of the accused moments after the killing. Unlike *Osbon* appellant was shown to have expressed a desire and intent to "get" the victim. In *Glover* the killing occurred in a public place being traversed by the many patrons of a tavern, while here the killing occurred in the private apartment of Brewer while the two were alone. There was further evidence that the gun had been held very close to the back of the victim's head when it was fired. The evidence in this case, although circumstantial in nature, provides more than grounds for suspicion of appellant's guilt and shows more than a mere opportunity to have committed the offense; it was such that the jury could draw the inference of guilt beyond a reasonable doubt.

Appellant complains that the testimony of the witness Day is subject to serious question in that his eyesight was not good, and his testimony differed from the testimony of others with regard to the exact time of the shooting and the clothing being worn by appellant. This evidence tended to undermine the weight and credit to be accorded his testimony and created conflicting descriptions of important events. Both matters were for the jury's consideration, and we cannot say under our proper role as an appellate court that the jury should have rejected the testimony of Mr. Day.

The evidence of guilt is sufficient and the conviction is affirmed.

GIVAN, C. J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.