**Arthur OATTS, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

**No. 681S152.**

Supreme Court of Indiana.

July 15, 1982.

Rehearing Denied Sept. 28, 1982.

Sandy L. Bryant, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Arthur Oatts, was convicted by a jury of murder. Ind.Code § 35–42–1–1 (Burns 1979 Repl.). He was sentenced to the Indiana Department of Correction for a period of thirty-five years. In his direct appeal, he presents the following issue for our review: whether the evidence was sufficient to support his conviction.

When this Court is confronted with a challenge to the sufficiency of the evidence, it is not our prerogative as an appellate tribunal to weigh the evidence or judge the credibility of witnesses. Rather, we must examine the evidence most favorable to the fact-finder's conclusion, together with the reasonable inferences which can be drawn therefrom. If, from that viewpoint, there is substantial evidence to support the jury's conclusion that defendant was guilty beyond a reasonable doubt, it will not be disturbed. *Moon v. State,* (1981) Ind., 419

N.E.2d 740; *Spears v. State,* (1980) Ind., 401 N.E.2d 331.

Defendant relies on *Glover v. State,* (1970) 253 Ind. 536, 255 N.E.2d 657, and *Manlove v. State,* (1968) 250 Ind. 70, 232 N.E.2d 874, for the proposition that a verdict may not be sustained if it is based on mere suspicion, conjecture, or speculation that the defendant committed the crime. As this Court has previously explained, the standard employed in *Glover* and *Manlove* governs the fact-finder's assessment of the evidence at the trial court level. *Easley v. State,* (1981) Ind., 427 N.E.2d 435; *Ruetz v. State,* (1978) 268 Ind. 42, 373 N.E.2d 152.

Here, the evidence most favorable to the verdict of the jury raises more than mere suspicion, conjecture, or speculation that defendant killed the victim, Eddie Simmons. The record reveals that on August 6, 1980, Simmons was shot three times on North Olney Street in Indianapolis, Indiana. Simmons died at the scene from what forensic pathologist James Benz, M.D., determined was a gunshot wound to the chest.

Four eyewitnesses to the shooting testified at trial. They agreed that Simmons's assailant had used a sawed-off shotgun or rifle. Two of the witnesses, Glenn Journey and Lonnie Grant, unequivocally identified defendant in court as the man who shot Simmons. Gil Journey stated on direct examination that he did not know if defendant was the man who shot Simmons; on cross-examination, however, he concluded without equivocation that defendant had not done the shooting. A fourth eyewitness, Shirley George, did not make an in-court identification.

Robert Nunn, a North Olney Street resident who did not witness the shooting, testified that about the time of the murder he had watched a man carrying a sawed-off rifle climb into a van, dark blue in color with a yellow and orange stripe on its side. Nunn did not make an in-court identification. He described the man as a black male approximately six feet, two inches in height.

Both Journeys, as well as George, described the man who shot Simmons as "tall"; George specified the height of the man was about six feet five to six feet seven inches. The record reveals defendant's height is approximately six feet four inches.

Both Glenn and Gil Journey testified that Simmons's assailant had curly hair, as well as sideburns. Gil Journey also indicated the man had a mustache. A long-standing acquaintance of defendant named Dennis Chislom testified that on August 6, 1980, the date of the shooting, defendant had a beard and mustache. Chislom agreed with eyewitness Lonnie Grant that defendant, who appeared clean-shaven at trial, was wearing more facial hair on the date of the shooting. They disagreed, however, as to whether defendant had changed his hair style.

The witnesses' testimony concerning the clothing worn by Simmon's assailant was generally corroborative in nature. Glenn Journey testified that the man wore a red shirt and dark pants. George stated that the assailant wore a red short-sleeved t-shirt with a blue jeans vest and pants. Lonnie Grant testified that the man wore a blue jeans vest and pants. Gil Journey could not remember what the assailant had worn. Dennis Chislom testified that on the day of the shooting, defendant was wearing a blue jeans vest and shirt.

Nunn's testimony regarding the assailant's use of a van was complemented. The eyewitnesses related that earlier in the day, Simmons and a man driving a dark blue van had scuffled outside a residence in the vicinity of 26th and North Olney Streets. Glenn Journey testified the van was blue with a gold stripe down the side, with gold carpeting inside. Gil Journey described the van as blue with a yellow stripe on its side. Lonnie Grant's testimony differed only in that he characterized the color of the stripe as "yellowish-orange." George stated the van was blue, had a stripe, but that she did not know its color. Chislom stated that on August 6, 1980, he had witnessed the scuffle and that defendant owned and was driving a blue van with a red stripe on that date.

This testimony was supplemented by Robert Hoke, a homicide detective for the Indianapolis Police Department assigned to the Simmons investigation. He testified that on August 7, 1980, defendant came to the police station of his own accord, where he was read a waiver of rights form which he signed. Defendant told Hoke that he had fought with Simmons the previous day, but denied shooting him. Defendant also stated that during the previous day, he had been wearing a blue jeans vest and pants, and that he had been driving a blue van. He told Hoke that the van had stalled on him, and that he left the vehicle at a friend's house at 32nd and Colorado Streets. Hoke went to the address that same day but failed to locate the van. He testified, however, that approximately two months later the van was located at 3516 North Colorado; Hoke stated the van had a red stripe on its sides.

Defendant's contention that the above evidence is insufficient to support the jury's verdict is predicated on the conflicts in the identification testimony, the failure of the state to produce the murder weapon or shell casings, and variations in the descriptions of Simmons' assailant and the van which defendant was driving that day. He maintains that these factors bring the instant case within the purview of *Glover v. State, supra,* where this Court reversed a murder conviction based on insufficient evidence.

In *Glover,* the only evidence which tended to implicate the defendant in the murder was the fact that he had fought with the victim earlier in the evening—and therefore had a possible motive for the crime. Here, however, defendant had not only fought with the victim earlier in the day, but was unequivocally identified as the assailant by two eyewitnesses to the shooting. Moreover, testimony of other witnesses regarding physical characteristics of the assailant, defendant, and the van circumstantially corroborated the unequivocal in-court identifications. Unlike *Glover,* the jury here was not presented with evidence which showed defendant only had the mere opportunity to commit the crime.

Defendant's challenge to the conflicts in the evidence invites us to weigh the evidence and judge the credibility of the witnesses, which we cannot do. Those were matters to be resolved by the jury, which had the opportunity to witness the demeanor of the witnesses. *Moon v. State, supra.* The failure of the state to produce the murder weapon does not in and of itself render the evidence insufficient. *Henderson v. State,* (1976) 264 Ind. 334, 343 N.E.2d 776. Consequently, it cannot be said that the evidence was insufficient as a matter of law to support the conclusion that defendant was the person who shot and killed Simmons. *Hemphill v. State,* (1979) Ind., 387 N.E.2d 1324; *Schilling v. State,* (1978) 268 Ind. 534, 376 N.E.2d 1142; *Nelson v. State,* (1972) 259 Ind. 339, 287 N.E.2d 336.

Defendant also asserts that in view of the conflicts in the testimony, the jury erred in disregarding his alibi defense that he was at the home of a friend, Robert McNeal, at the time of the shooting. Defendant's argument again invites us to reweigh the evidence. So long as the state's evidence is sufficient to render a jury's disbelief in an alibi defense reasonable, the jury's rejection of the defense will not be disturbed. *White v. State,* (1979) Ind., 397 N.E.2d 949; *Jones v. State,* (1978) 267 Ind. 680, 372 N.E.2d 1182. Inasmuch as there was sufficient evidence to support the jury's conclusion that defendant was the man who shot Simmons, its rejection of defendant's alibi defense must stand.

For all the foregoing reasons, there was no trial court error and its judgment is affirmed.

Judgment affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.