**Carl DAUSCH, Appellant
(Defendant Below),**

v.

**STATE of Indiana, Appellee
(Plaintiff Below).**

**No. 49S00–9101–CR–00071.**

Supreme Court of Indiana.

June 29, 1993.

---

Aaron E. Haith, Choate Visher & Haith, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Cynthia L. Ploughe, Deputy Atty. Gen., Indianapolis, for appellee.

DICKSON, Justice.

Acquitted on charges of criminal deviate conduct, a class A felony, robbery, a class A felony, and burglary, a class A felony, the defendant Carl Dausch was found guilty of rape, a class A felony, criminal confinement, a class B felony, and battery, a class C felony, and was determined to be a habitual offender. Following the imposition of a 60–year sentence, the defendant initiated this direct appeal asserting two issues: the sufficiency of evidence to support the convictions and the admissibility of State's Exhibit 19, an audiotape recording of a statement made by the alleged victim.

## Sufficiency of Evidence

The defendant contends that the trial evidence was insufficient to support a reasonable inference of intent to rape, confine, and batter the victim. He argues that the jury improperly disregarded the victim's in-court testimony, substituting instead the opinion of the State's expert witness regarding battered woman syndrome. He also contends that the evidence was insufficient to prove the "serious bodily injury" element of rape as a class A felony.

In addressing the issue of sufficiency of evidence, we will affirm the conviction if, considering only the probative evidence and reasonable inferences supporting the verdict, without weighing evidence or

assessing witness credibility, a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt. *Case v. State* (1984), Ind., 458 N.E.2d 223, 226; *Loyd v. State* (1980), 272 Ind. 404, 407, 398 N.E.2d 1260, 1264, *cert. denied* (1980), 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

■ The evidence favorable to the judgment is derived primarily from an audiotape recording of a police interview of the victim, P.D., age 26, given September 27, 1989. In it P.D. describes that early in the morning on September 22, 1989, P.D. returned to her home where the defendant, her former boyfriend, waited for her inside and attacked her from behind, grabbing her by the throat. During the next few hours, the defendant physically abused P.D., dragging her throughout the different rooms of the house as he beat her with his fists. At one point he forced P.D. into the shower where he continued the beating and then left her there for 10–15 minutes. Although P.D. was crying and begging the defendant to stop, he demanded that she perform oral sex on him. When she was unable to perform due to her extensive facial injuries, bloody nose, and crying, the defendant threw her to the floor, got on top of her, and engaged in sexual intercourse despite her pleas that he stop hitting her. P.D. fled her house and sought help from a neighbor while the defendant was asleep.

P.D. was hospitalized for four days for treatment of injuries including an extensively bruised and swollen face, a fractured nose, cuts requiring over 20 stitches in the head and nose, and multiple bruising and tenderness to her hands, arms, and ears. Photographs of her battered face were admitted in evidence. At trial, however, P.D. denied the truthfulness of her September 27, 1989, recorded statement and testified that the defendant did not force her to attempt oral sex, that he did not rape her, and that he did not break into her home but rather used a key as they were living together. Her trial testimony attributed her injuries to a fight between them while both

were intoxicated which began after she hit him with a candlestick.

Linda Edington presented opinion testimony as an expert witness for the State regarding battered woman syndrome. She briefly described a "cluster of symptoms that seems to be very typical of battered women," including an inability to terminate a relationship because of fear of violence. Although Edington had not personally interviewed or observed P.D., she had read P.D.'s pre-trial statement and deposition which served as a basis for Edington's agreement with the assertion that P.D. "falls within the purview of the battered spouse syndrome." Record at 546. The defense presented contrary expert testimony.

The culpability required for convictions of rape, criminal confinement, and battery is "knowingly or intentionally." Ind.Code §§ 35–42–4–1, 35–42–3–3, and 35–42–2–1; *see Woodford v. State* (1986), Ind., 488 N.E.2d 1121, 1123–24 (rape); *Webster v. State* (1987), Ind., 513 N.E.2d 173, 175 (confinement); and *Mitchell v. State* (1990), Ind., 557 N.E.2d 660, 664 (battery). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind.Code § 35–41–2–2(b). "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." Ind.Code § 35–41–2–2(a). Notwithstanding the defendant's appellate argument that the jury disregarded evidence including the victim's in-court testimony in favor of her earlier out-of-court recorded statement, consideration of the evidence favorable to the verdict leads us to conclude that a reasonable jury could find beyond a reasonable doubt that the defendant knowingly or intentionally engaged in conduct constituting rape, criminal confinement, and battery.

■ The defendant further contends that the evidence was insufficient to prove the element of resulting "serious bodily injury," thus challenging the conviction for battery as a class C felony. Ind.Code § 35–42–2–1(3). That phrase is defined in Ind.Code § 35–41–1–25:

"Serious bodily injury" means bodily injury that creates a substantial risk of death or that causes serious permanent disfigurement, unconsciousness, extreme pain, or permanent or protracted loss or impairment of the function of a bodily member or organ.

In the present case, P.D. suffered a broken nose; swollen shut eyes; and lacerations and bruises to her face, neck, chest, and extremities, with over 20 sutures required for her nose and head injuries. Injuries comparable to those suffered by the victim in this case have been found sufficient to constitute serious bodily injury. *See e.g. Schweitzer v. State* (1990), Ind., 552 N.E.2d 454 (pain greater than previously experienced); *Beanblossom v. State* (1988), Ind., 530 N.E.2d 741 (blow to head sufficient to knock victim to his hands and knees and to be semiconscious for a short period); *Hawkins v. State* (1987), Ind., 514 N.E.2d 1255 (broken arm, badly bruised wrist, disuse of hand for two and one-half months, and seven months of pain); and *McGee v. State* (1986), Ind., 495 N.E.2d 537 (blow to face knocking victim unconscious, requiring 17 stitches, and giving black eye). The nature of the victim's injuries, as shown by her recorded statement, the hospital records, and the photographs admitted at trial, is sufficient to prove serious bodily injury.

We decline to reverse the convictions upon the defendant's claim of insufficient evidence.

### Admissibility of Victim's Audiotape Statement

As his remaining issue the defendant contends that the trial court erred in admitting over his objection State's Exhibit 19, the audiotape recording of P.D.'s statement to police. On appeal the defendant asserts, as he did at trial, that the recording is not admissible under the rule of *Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482, claiming that it was hearsay. We understand the State's response to argue that its Exhibit 19 was properly admitted both as a prior inconsistent statement for impeachment purposes and as substantive testimony under *Patterson*. The *Patterson* rule provides for the admissibility as substantive evidence of an out-of-court statement where the declarant provides testimony acknowledging the existence of the statement and its contents, and is available for cross-examination thereon. *Lambert v. State* (1989), Ind., 534 N.E.2d 235, 237.

The charged offense occurred September 22, 1989. Five days later, following her discharge from the hospital, P.D. provided police with details of a brutal attack upon her by the defendant. The recorded statement was taken September 27, 1989. Defense counsel took P.D.'s deposition on April 24, 1990, wherein she acknowledged giving the prior statement to police but testified in a manner diametrically opposed to her version in the recorded statement.

On Monday, September 11, 1990, the first day of trial, the State presented Louise Rash, P.D.'s friend and roommate, who testified that P.D. was not at home when police attempted to serve a subpoena on P.D. earlier that morning. Rash stated that P.D. and the defendant were planning to marry and that P.D. had departed for Daytona, Florida, the previous Saturday for the purpose of avoiding the trial. P.D.'s April 24 deposition, State's Exhibit 16, was then admitted in evidence. The recorded statement, State's Exhibit 19, was thereafter admitted as a prior statement inconsistent with P.D.'s deposition testimony. Late on Tuesday, the second day of trial, P.D. appeared in the courtroom and informed the court that she had been served with a subpoena earlier that afternoon. The following day the trial court ruled that her prior deposition, State's Exhibit 16, be withdrawn from evidence because P.D. had become available as a witness. P.D. then testified and admitted having given the prior statement to police and acknowledged its contents, but claimed that most of the assertions therein were false. Within his argument urging error in the admission of State's Exhibit 19, the defendant also asserts that the trial court erred in admitting the predicate basis for its admission, P.D.'s deposition, urging that she was not an unavailable witness.

In determining the defendant's claim that the admission of State's Exhibit 19 constitutes reversible error under *Patterson*, 263 Ind. 55, 324 N.E.2d 482, we are not restricted solely to the circumstances presented to the trial judge at the time of his ruling. A questionable foundation for the admissibility of evidence may be cured by the subsequent testimony. *Burton v. State* (1986), Ind., 497 N.E.2d 535, 537–38. Errors in the admission of evidence may be rendered harmless by the introduction of subsequent evidence. *Hooper v. State* (1983), Ind., 443 N.E.2d 822, 825; *Hall v. State* (1978), 269 Ind. 24, 29, 378 N.E.2d 823, 827. We therefore decline to limit our assessment of the admissibility of State's Exhibit 19 based only on State's Exhibit 16, but will include in our consideration the subsequent in-court testimony of P.D.

Although our recent decision in *Modesitt v. State* (1991), Ind., 578 N.E.2d 649, is perhaps noted more for its prospective repudiation of the *Patterson* rule,[1] it nevertheless also applied then-existing *Patterson* jurisprudence and found reversible error where *Patterson* statements are presented with "drumbeat repetition" prior to calling the victim as a witness, thus precluding direct, immediate cross-examination and resulting in the victim's veracity being vouchsafed. *Modesitt*, 578 N.E.2d at 651–52. Like *Modesitt*, the victim's *Patterson* statement in the present case was admitted in advance of her in-court testimony. However, unlike the young child victim in *Modesitt*, P.D. was an adult woman whose story was neither repeated to the jury by multiple witnesses in advance of her testimony nor presented in paraphrased form. Rather, P.D.'s audiotape statement is highly reliable because it was an actual recording of her own words and because she not only acknowledged making the statement, but also admitted that it accurately reflected her report at the time it was given. She was cross-examined by the defense regarding the prior recorded statement.

Considering P.D.'s age and maturity, the nature and content of her in-court testimo-ny, the unchallenged accuracy of the audiotape recording, and the extent of actual cross-examination, we decline to find reversible error in the admission of State's Exhibit 19.

Judgment affirmed.

SHEPARD, C.J., and GIVAN, J., concur.

DeBRULER, J., concurs and dissents in separate opinion in which KRAHULIK, J., concurs.

DeBRULER, Justice, concurring and dissenting.

In her first statement, the victim, Patricia Deem, said that appellant had thrown her to the floor, had gotten on top of her, and had raped her. This statement was unsworn. At trial, under oath, she persisted in testifying that she and appellant had lived together, that they had the fight that resulted in serious injury to her, but that she had not been raped. In explaining her intent in giving police the first exaggerated version of the events, she testified:

A. At the time I was mad and I was going to try to get him for anything I could. Cause I was still angry with him, you know.

Q. And were you also under any threats from your family or anyone?

A. Yes.

Q. Is that why you gave this statement?

A. Yes.

Record at 585. Dr. Corbett's findings upon his pelvic examination were consistent with Deem's trial assertion that she had not been raped. The verdict rests upon Deem's unsworn statement to police, and the inferences from the trial evidence. Such statement and inferences do not constitute substantial evidence of probative value from which a rational trier of fact could determine guilt of rape and confinement beyond a reasonable doubt, and consequently are together insufficient. *See, e.g., Glover v. State* (1970), 253 Ind. 536, 255 N.E.2d 657. The evidence of battery is, however, suffi-

---

1. Because the trial in the present case occurred before our *Modesitt* opinion, *Patterson* thus ap-plies. *Alva v. State* (1993), Ind., 605 N.E.2d 169, 170, n. 1.

cient. The conviction for rape and confinement should be reversed, the convictions for battery should be affirmed, and the case should be remanded for consistent sentencing on such conviction.

KRAHULIK, J., concurs.