**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 19 2014, 9:10 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**PATRICIA CARESS MCMATH**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

MICHAEL MASON,                          )
                                        )
    Appellant-Defendant,            )
                                        )
      vs.                      )   No. 49A04-1310-CR-493
                                        )
STATE OF INDIANA,                       )
                                        )
    Appellee-Plaintiff.             )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Kurt M. Eisgruber, Judge
Cause No. 49G01-1208-MR-57037

**May 19, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

Michael Mason appeals his conviction of Murder[1] as well as the sixty-five-year sentence imposed thereon.[2]

We affirm.

## Issues

Mason raises two issues for our review:

I.      Whether there is sufficient evidence to support his conviction; and

II.     Whether the trial court erred in sentencing him.

## Facts and Procedural History

In August 2012, Rochelle Wills and her husband were refurbishing a rental house at 34th Street and Carrollton Avenue in Indianapolis. On August 10, 2012, at approximately 5:00 p.m., Willis was packing her tools in her car when twenty-nine-year-old Mason approached her and introduced himself as "Mike." He asked Wills if the house was available to rent and told her that she was too pretty to be doing that kind of work. Wills felt uncomfortable and told Mike he would have to contact the rental management company if he was interested in renting the house.

The following night at about midnight, Wills and her husband were working upstairs at the house when they heard a knock at the door. Wills went downstairs and unlocked the door. Before she had the chance to open the door, Mason and another man pushed their way

---

[1] Ind. Code § 35-42-1-1.

[2] Mason does not challenge his conviction for Unlawful Possession of a Firearm by a Serious Violent Felon.

inside the house. Wills noticed that Mason was wearing a white tank top with blue jean shorts, and his hair was in small twists or little braids. Wills also noticed that Mason "was missing the majority of his middle finger on his right hand." Tr. p. 252. She thought that he was "under the influence or on something." Tr. p. 252. Wills repeatedly told Mason and the other man that they needed to leave. Wills' husband came downstairs and told Mason the same thing. Mason ignored Wills and her husband and went upstairs to look around the house. Mason and the other man eventually left.

Just down the street, at Carrollton and Fairfield Avenue, Latoya Glass and Ashley Davis were sitting in Davis's car waiting for their friends to get into another car so they could all go to a party together. Glass was in the driver's seat. Just as she was about to leave, Mason walked up to the driver's side of the car. Davis, who was sitting in the passenger seat, noticed that Mason was wearing a white tank top and blue jean shorts. She also noticed that his hair was in small twists or braids, and he was missing half of one of the fingers on his right hand. Neither Glass nor Davis recognized or knew Mason.

Mason bent over and asked Glass what she was doing in the neighborhood. Glass responded that she was just picking someone up and did not know anything about the neighborhood. Mason shot the back of the car, and Glass pushed Davis out the passenger's side door. Mason fired four or five more shots at Glass and then walked away. Glass died as a result of the gunshot wounds.

While Wills and her husband were cleaning tools at the house down the street, they heard the five or six gunshots. They decided to leave immediately, and as Wills drove down

3

the street past the scene of the shooting with her car windows down, she overheard a description of the shooter that sounded like Mason. When she got home, she called 911 and explained what had happened inside the house that night. Detective James Vaughn was assigned to investigate the case. He interviewed Wills about twelve hours after the shooting and showed her two photo arrays. She identified Mason as the man who had been inside the rental house she and her husband were refurbishing.

Detective Vaughn also interviewed Mason, who arrived at the interview with his right hand wrapped in a cloth. The detective asked Mason to remove the cloth so he could photograph Mason's partially missing middle finger. Mason denied being at the scene of the shooting. Rather, he told the detective that he spent the evening at his mother's house watching television and playing games with his girlfriend and daughter.

In August 2013, a jury convicted Mason of murder, and the trial court convicted him of unlawful possession of a firearm by a serious violent felon as a Class B felony. At a September 2013 sentencing hearing, the evidence revealed that Mason has an extensive criminal history, which includes fifteen prior arrests and six prior convictions, three misdemeanors and three felonies. Mason has violated probation in the past and was on parole at the time he murdered Glass. At the end of the sentencing hearing, the trial court found the following aggravating factors: 1) Mason was on parole at the time he killed Glass; 2) Mason has a legal history that includes prior incarceration at the Department of Correction as well as probation violations; 3) Mason committed the murder in a struggling neighborhood where people are rehabbing houses; and 4) the facts and circumstances of the murder,

4

including the facts that Glass was picked at random as a target of opportunity and that she happened to be in the wrong spot at the wrong time. The trial court also mentioned that "terrible tragic things happened simply because of drugs." Tr. p. 400. The trial court further found the fact that Mason has a child to be a mitigating factor and sentenced Mason to sixty-five years for murder and ten years for unlawful possession of a firearm by a serious violent felon, running the sentences concurrently for a total executed sentence of sixty-five years.

Mason appeals.

### Discussion and Decision

### I. Sufficiency of the Evidence

Mason argues that there is insufficient evidence to support his conviction of murder. When reviewing a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. Taylor v. State, 676 N.E.2d 1044, 1046 (Ind. 1997). Rather, we look to the evidence and the reasonable inferences to be drawn therefrom that support the verdict. Id. at 1046-47. If evidence of probative value exists from which a jury could find the defendant guilty beyond a reasonable doubt, we will affirm the conviction. Id. at 1047. Further, it is well settled that a murder conviction may be sustained on circumstantial evidence alone. Id. If a reasonable inference can be drawn from the circumstantial evidence, we will not disturb the verdict. Id.

Here, Mason argues that the "evidence is not sufficient to prove beyond a reasonable doubt that [he] was the person who killed Latoya Glass." Appellant's Br. p. 6. Specifically, Mason contends that "there is no witness who saw [Glass] being shot who could identify

Mason as the shooter. The circumstantial evidence does no more than raise a suspicion that Mason was the shooter. This is not enough to support the conviction." Appellant's Br. p. 7.

However, our review of the evidence reveals that Wills identified Mason as the man who entered the house she was refurbishing at 34th Street and Carrollton at about midnight on August 11, 2012. He was wearing a white tank top and blue jean shorts, his hair was in small twists or little braids, and he was missing the majority of the middle finger on his right hand. Shortly after Mason left the house, Wills and her husband heard gunshots down the street at Carrollton and Fairfield. Witnesses to the shooting noted that the shooter was wearing a white tank top and blue jean shorts, his hair was in small twists or little braids, and he was missing part of the middle finger on his right hand. A reasonable inference can be drawn from this evidence that Mason is the person who shot and killed Glass. There is therefore sufficient evidence to support his murder conviction.

We further note that Mason's reliance on Glover v. State, 255 N.E.2d 657 (Ind. 1970), is misplaced. In the Glover case, Glover and the victim were involved in a scuffle in a tavern parking lot. Later that night, Glover's brother's fiancée noticed two people fighting near the tavern as well as someone dragging something to the trash barrels behind the tavern. It was too dark to see who was involved in the fight. The victim was found dead in that area later that night. Glover was convicted of murder. However, the Indiana Supreme Court reversed the conviction after concluding there was no evidence from which a reasonable jury could infer it was Glover who stabbed the victim. Id. at 659. Specifically, the Court explained that the most that was shown was that Glover was in the area when the killing occurred. Id. This

6

was on a public sidewalk running alongside a crowded tavern, which was also a route to the parking lot at the rear of the tavern. Id. The Indiana Supreme Court explained that showing mere opportunity to commit the crime is not sufficient. Id. Here, however, the State showed more than mere opportunity to commit the crime. Specifically, the crime witnesses' description of the murderer was consistent with Wills' description of Mason, and the murder occurred shortly after Mason left the house Wills was renovating. Further, the murder occurred on a quiet city street around midnight with no one other than the murderer in the vicinity. There is sufficient evidence to support Mason's conviction.

## II. Sentence

Mason also argues that the trial court erred in sentencing him. Sentencing decisions rest within the sound discretion of the trial court. Anglemyer v. State, 868 N.E.2d 482, 493 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218 (Ind. 2007). Under Indiana's advisory sentencing scheme, once the trial court has entered a sentencing statement, which may include the existence of aggravating factors, the court may impose any sentence that is authorized by statute. Id. at 491. As long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. Id. at 490. An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. Id. A trial court may abuse its discretion in the following ways: 1) failure to enter a sentencing statement; 2) entering a sentencing statement that includes aggravating or mitigating factors that are not supported by the record; 3) entering a sentencing statement that

7

omits reasons that are clearly supported by the record; or 4) entering a sentencing statement that includes reasons that are improper as a matter of law. Id.

Here, Mason argues that the trial abused its discretion in sentencing him because it relied on aggravators not supported by the record. Specifically, Mason argues that there is no evidence in the record that supports the trial court's finding that this offense was drug-related or that the neighborhood was struggling. However, we need not address this issue because a single aggravator is sufficient to support an enhanced sentence. Williams v. State, 891 N.E.2d 621, 633 (Ind. Ct. App. 2008).

Here, the trial court found the following three aggravating factors in addition to those about which Mason complains: 1) Mason was on parole at the time he murdered Glass; 2) Mason has a legal history that includes incarceration in the Department of Corrections as well as probation violations; and 3) the facts and circumstances of the murder, including the facts that Glass was picked at random as a target of opportunity and that she happened to be in the wrong spot at the wrong time. Because Mason does not dispute these factors and only one factor is required to support an enhanced sentence, we need not address Mason's sentencing issue.

### Conclusion

There is sufficient evidence to support Mason's murder conviction, and the trial court did not err in sentencing him.

Affirmed.

KIRSCH, J., and MAY, J., concur.

8