ATTORNEYS FOR APPELLANT
Stephen T. Owens
Public Defender of Indiana

John Arthur Pinnow
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Curtis T. Hill, Jr.
Attorney General of Indiana

Brian Lee Reitz
Deputy Attorney General

Andrew A. Kobe
Deputy Attorney General

Ellen Hope Meilaender
Deputy Attorney General
Indianapolis, Indiana



FILED
May 05 2017, 12:52 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

_____

In the
Indiana Supreme Court

_____

No. 48S02-1609-PC-480

TRONDO L. HUMPHREY,

*Appellant (Petitioner below),*

v.

STATE OF INDIANA,

*Appellee (Respondent below).*

_____

Appeal from the Madison Circuit Court 3
Nos.  48C03-1206-PC-19 and 48D03-9511-CF-417
The Honorable Thomas Newman, Jr., Judge

_____

On Petition To Transfer from the Indiana Court of Appeals, No. 48A02-1508-PC-1238

_____

**May 5, 2017**

**Rucker, Justice.**

On a claim of ineffective assistance of trial counsel, Trondo L. Humphrey appeals the denial of his petition for post-conviction relief. Concluding petitioner established his grounds for relief by a preponderance of the evidence, we reverse the judgment of the post-conviction court.

**Facts and Procedural History**

Humphrey was convicted of murder in 1996 and sentenced to a term of sixty years. The underlying facts as set forth on direct appeal before this Court are as follows:

> On the night of April 28-29, 1995, Benjamin Laughlin and Stephen Sites were driving around a neighborhood in Anderson looking for crack cocaine. Sites' account of events is summarized first. Sites was driving his truck. The two had been circling the same neighborhood for thirty to forty-five minutes when they saw three people in an alley. Believing the three to be drug dealers, Laughlin told Sites to pull into the alley. One of the three approached the truck on the passenger side and Laughlin asked the dealer to get in the cab to discuss a cocaine sale. As Sites drove, Laughlin and the dealer quickly exchanged words, the dealer drew a gun, Laughlin grabbed it, and the gun discharged. Sites saw the barrel of the gun but did not see a "flash" because the dealer "had the gun pushed up against [Laughlin]." Record at 253. The single shot struck Laughlin in the abdomen and the dealer jumped out of the moving truck and ran away. Sites testified that the dealer was young, black, had short hair, and was about five feet ten inches tall. However, Sites was unable to provide a more precise identification of the dealer and also could not identify his two comrades waiting nearby. Sites estimated that the dealer was in the truck for thirty to forty seconds. Sites drove Laughlin to a nearby hospital where he eventually died from the wound. A forensic technician examined Sites' truck for fingerprints and blood spatters but was unable to recover any physical evidence or discernable fingerprints from the vehicle.
>
> Donnie Smith testified that he was drinking and smoking marijuana with the defendant and Roosevelt Brooks on the night of the murder in Brooks' garage near the alley where the shooting occurred. The garage door was open so the three had access to the alley to sell drugs on the street. At some point a truck stopped outside the garage and the defendant went outside to greet it, indicating to Smith that he believed the occupants were looking for cocaine. Smith heard the door of the truck open and close in the alley but testified that he did not hear any shots or actually see the defendant approach or enter the truck. The truck then "peel[ed] out" and the defendant returned to the garage, telling Smith that the "dude" tried to "gank him" or "get him." Record at 278. Smith saw only the back of the truck and could not testify to its color or whether it was the vehicle

2

driven by Sites that evening. At some point prior to this incident, but not in the garage that night, Smith had seen the defendant carrying a gun.

On June 16, 1995, Brooks, while in jail on an unrelated charge, gave an unsworn written statement to a police detective about the events of that night. According to the statement, Brooks was in his garage with someone he identified as the defendant from a photographic lineup containing pictures of six black males. The defendant went out to a blue truck with "white guys" inside, Brooks heard a "noise," and the defendant returned soon thereafter, stating that he had shot one of the men. Record at 310. At trial, Brooks testified that he knew the defendant but was not with him or Smith on the night of the shooting. Brooks repudiated the statement, which had been admitted to impeach the credibility of his courtroom version, and testified in essence that it was fabricated due to police pressure.

Humphrey v. State, 680 N.E.2d 836, 837-38 (Ind. 1997) [hereinafter Humphrey I] (footnotes omitted).

Humphrey appealed raising several claims, including: (1) the trial court abused its discretion when it admitted into evidence Brooks' statement regarding Humphrey's participation in the murder; and (2) the trial court erred when it did not admonish the jury to consider the statement for impeachment purposes only. This Court held that Brooks' prior statement was admissible for impeachment purposes, and regarding the admonishment we said, "[h]ad a proper objection been lodged to the instruction, the court would have been required to entertain it." Humphrey I, 680 N.E.2d at 840. Ultimately, we affirmed the conviction noting, among other things, "[t]here is no claim of ineffective assistance of trial or appellate counsel raised in this appeal." Id.

Fifteen years later Humphrey filed a *pro se* petition for post-conviction relief which was later amended by counsel. The amended petition alleged trial counsel rendered ineffective assistance for the following reasons: (1) failing to object to the admission of Brooks' unsworn statement on hearsay grounds; (2) failing to request an admonishment that the jury may consider Brooks' unsworn statement for impeachment purposes only; (3) failing to object to and improperly endorsing the trial court's erroneous instruction on prior inconsistent statements; and (4) failing to offer in its place an instruction that reflected a correct statement of the law.

3

The State responded denying Humphrey's substantive claims and also asserting they were barred by the doctrine of laches. After a hearing, the post-conviction court concluded that Humphrey's claims were not barred and denied relief on the merits. On review, in a unanimous opinion, the Court of Appeals agreed with the post-conviction court on the issue of laches, but reversed on the substantive claims. In so doing the Court concluded, among other things, "Humphrey was prejudiced by counsel's errors that allowed the jury to consider as substantive evidence the only evidence that identified Humphrey as the shooter." Humphrey v. State, 56 N.E.3d 84, 94 (Ind. Ct. App. 2016) [hereinafter Humphrey II]. We agree with our colleagues on the Court of Appeals and previously granted transfer to explore further Humphrey's substantive claims. We summarily affirm that portion of the court's opinion disposing of the State's claim of laches. Additional facts are set forth below.

## Standard of Review for Post-Conviction Proceedings

"The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence." Campbell v. State, 19 N.E.3d 271, 273-74 (Ind. 2014). "When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment." Id. at 274. In order to prevail on an appeal from the denial of post-conviction relief, a petitioner must show that the evidence leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. Weatherford v. State, 619 N.E.2d 915, 917 (Ind. 1993). Further, the post-conviction court in this case entered findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). Although we do not defer to the post-conviction court's legal conclusions, "[a] post-conviction court's findings and judgment will be reversed only upon a showing of clear error – that which leaves us with a definite and firm conviction that a mistake has been made." Ben-Yisrayl v. State, 729 N.E.2d 102, 106 (Ind. 2000) (internal quotation omitted).

## Standard of Review for Ineffective Assistance of Counsel

When evaluating an ineffective assistance of counsel claim, we apply the two-part test articulated in Strickland v. Washington, 466 U.S. 668 (1984). See Helton v. State, 907 N.E.2d

4

1020, 1023 (Ind. 2009). To satisfy the first prong, "the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." McCary v. State, 761 N.E.2d 389, 392 (Ind. 2002) (citing Strickland, 466 U.S. at 687-88). To satisfy the second prong, "the defendant must show prejudice: a reasonable probability (i.e. a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." Id. (citing Strickland, 466 U.S. at 694).

## Discussion

### I. Deficient Performance

### A. Trial strategy

In its findings and conclusions, the post-conviction court determined that trial counsel did not render deficient performance by failing to object on hearsay grounds to the admission of Brooks' prior inconsistent statement. Similarly, the post-conviction court determined trial counsel did not render deficient performance by failing to request an admonishment based on Evidence Rule 105, or failing to object to the trial court's final instruction on prior inconsistent statements or tender an instruction on prior inconsistent statements. According to the post-conviction court, "a limiting instruction may have done more harm than good because it could have focused the jury on an undesirable aspect of the evidence." App. at 81 (Post-conviction Findings of Fact and Conclusions of Law at 4).

The State elaborates on the post-conviction court's findings contending counsel engaged in reasonable trial strategy. According to the State, once trial counsel's objection on foundation grounds was overruled counsel was left with two choices: "(1) make a hearsay objection and request a limiting instruction and thereby draw attention to the evidence; or (2) decide not to call more attention to the evidence. [Defense counsel] chose the latter[.]" Br. of Appellee at 20-21 (footnote omitted). This contention is not supported by the record. After the unsworn statement had been admitted, defense counsel made repeated references to it throughout the remainder of

5

the trial. It was defense counsel—not the State—who read aloud in court the portion of Brooks' unsworn statement that identified Humphrey as the shooter.

In closing argument, it was defense counsel who highlighted the most damaging piece of information from Brooks' unsworn statement to the jury. See R. at 474 ("Recall where the testimony came regarding *Trondo acknowledging that he shot someone*, that came from State's witness, Brooks." (emphasis added)). This argument was exacerbated when counsel urged the jury to "consider the out-of-court statements as evidence in determining the guilt or innocence of the defendant of the crime charged." R. at 488-89. Based on this record, it could not have been counsel's strategy—to decline to mount a hearsay objection or request a limiting instruction—to avoid drawing attention to Brooks' statement. This is so because counsel repeatedly referred to that which the State claims counsel did not want to draw attention.

In similar fashion, the State also contends defense counsel *wanted* Brooks' unsworn statement admitted to comport with the "secondary trial strategy . . . to focus on the prior inconsistent statements to sow reasonable doubt." Br. of Appellee at 22. We note the following flaws with this contention. First, assuming it was counsel's intent to use the unsworn statement as part of his defense ignores the fact that he attempted, albeit unsuccessfully, to prevent the statement from being admitted into evidence in the first place. See, e.g., R. at 308 (objecting to the admission of the statement on foundation grounds); R. at 315 (objecting to the publication of the statement to the jury). Second, the notion that counsel wanted the unsworn statement admitted into evidence directly contradicts the State's position that it was a reasonable strategy not to object or request a limiting instruction because counsel "decide[d] not to call more attention to the evidence." Br. of Appellee at 21. The State argues defense counsel "retreated to the reasonable secondary defense of not drawing further attention to evidence that was going to be admitted[,]" but also contends counsel "decided to meet that statement head-on and use it to show the inconsistencies in the State's key witnesses." Id. at 22-23 (citations omitted). These two proffered strategies advanced by the State directly oppose each other. It defies credulity to say on the one hand that defense counsel strategically elected not to mount a hearsay objection or request a limiting instruction to refrain from drawing attention to Brooks' unsworn statement, but insist on the other hand that counsel wanted to "use it to show the inconsistencies in the State's

6

key witnesses." Id. at 23. Third, counsel rested without presenting any evidence to defend against the charges—instead electing to argue that the State had failed its burden to prove the identity of the shooter. See R. at 460 ("The issue here is as the State of Indiana has claimed, is whether or not *Trondo L. Humphrey* . . . killed Benjamin Laughlin." (emphasis added)). Permitting the jury to consider hearsay statements as substantive evidence that directly supports Humphrey's guilt is inconsistent with this strategy; thus, calling into question the presumption that "counsel provided adequate assistance and exercised reasonable professional judgment."[1] Permitting as substantive evidence an otherwise impermissible unsworn statement claiming that Humphrey admitted to the murder does not support the trial strategy of arguing to the jury that the State had failed its burden to prove that Humphrey was the shooter.

There is no dispute that "tactical or strategic decisions will not support a claim of ineffective assistance." McCary, 761 N.E.2d at 392 (alteration and quotation omitted). Also, we afford great deference to trial counsel's discretion to choose strategy and tactics. Id. And we "strongly presume that counsel provided adequate assistance and exercised reasonable professional judgment in all significant decisions." Id. (citing Strickland, 466 U.S. at 689-90). But where the record contradicts the presumption that counsel's performance was the result of strategic and tactical planning, we will not afford such deference to counsel's decision-making.

## B. Failure to object on hearsay grounds

At trial, defense counsel lodged an objection to the admission of Brooks' written statement solely based on an improper foundation. Specifically, defense counsel declared: "It's improper, Your Honor. He's not been asked proper [sic] question for foundation to offer that as an exhibit." R. at 308. Because Brooks admitted to having made the statement and admitted that the signature on the document was his signature, this objection was overruled and the written

---

[1] Nor does testimony from the post-conviction hearing support that defense counsel's decisions were a conscious choice to advance his trial strategy. The post-conviction court found: "[Trial counsel] did object on foundation grounds but could not remember due to the passage of time why he did not object based on hearsay." App. at 81 (Post-conviction Findings of Fact and Conclusions of Law at 4). Specifically, trial counsel could not recall the reason for failing to request an admonishment but simply "surmised that one *possibility* was trial strategy." Id. (emphasis added).

7

statement was admitted into evidence. At no point did defense counsel object based on hearsay. As we previously observed:

> The statement in question is clearly hearsay if offered to prove the facts contained because it was given out of court notwithstanding that Brooks was on the stand. This is precisely the point decided in Modesitt v. State, 578 N.E.2d 649 (Ind. 1991), which overruled Patterson v. State, 263 Ind. 55, 324 N.E.2d 482 (1975). Patterson had held that out-of-court statements not given under oath could be considered as substantive evidence so long as the declarant was available for cross-examination at trial concerning the statement. In its place, Modesitt adopted Federal Rule of Evidence 801(d)(1) as the law of Indiana. The Indiana Rules of Evidence have since been adopted, and accomplish by Rule what Modesitt did by decision. Indiana Evidence Rule 801(d)(1)(A) provides that a statement is not hearsay if "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . inconsistent with the declarant's testimony and was given under oath subject to the penalty of perjury at a trial, hearing or other proceeding, or in a deposition[.]" Because the prior statement was not under oath, it was not admissible under this Rule or any other.

Humphrey I, 680 N.E.2d at 838. A defendant's objection on grounds of hearsay is critical. This is so because "[o]therwise inadmissible hearsay evidence may be considered for substantive purposes and is sufficient to establish a material fact at issue when the hearsay evidence is admitted without a timely objection at trial." Banks v. State, 567 N.E.2d 1126, 1129 (Ind. 1991). Had a proper objection been raised to Brooks' written statement the trial court would have been required to sustain it. See Modesitt, 578 N.E.2d at 653-54. By failing to raise a proper objection counsel's conduct fell below an objective standard of reasonableness and was thus deficient.

### C. Failure to request an admonishment

The State contends counsel did not perform deficiently in failing to request an admonishment. In this regard the State essentially reprises its argument concerning trial strategy. According to the State, "either requesting a limiting instruction or objecting to the trial court's instruction on prior inconsistent statements would have undermined the strategic focus on the inconsistencies as showing reasonable doubt." Br. of Appellee at 23-24.

Even in instances where otherwise impermissible hearsay is admitted for the limited purpose of impeachment, "if a defendant believes there is a danger that a jury could use a statement as substantive evidence, then it is incumbent upon the defendant to request that the jury be admonished that the statement be used to judge *the witness's credibility* only." Small v. State, 736 N.E.2d 742, 746 (Ind. 2000) (emphasis added). That never occurred here. "Brooks' prior inconsistent statement could have been precluded from consideration as substantive evidence for the reasons explained, [counsel's] failure to object on hearsay grounds or request a limiting instruction allowed the jury to consider the statement in deciding Humphrey's culpability." Humphrey I, 680 N.E.2d at 840. As we observed in Appleton v. State:

> Once [the State's witness] admitted that he made a police statement prior to trial that was inconsistent with his testimony regarding [the defendant's] involvement in the incident, impeachment was complete. [The State's witness] had admitted himself a liar. Reciting segments of [his] pretrial statement was thus superfluous. The only purpose such recitation could have would be to get the details of [his] former statement before the jury as substantive evidence, the very thing we decided to prohibit in overruling Patterson.

740 N.E.2d 122, 126 (Ind. 2001) (internal citation omitted). The same is true here. By failing to request an admonishment or a limiting instruction counsel performed deficiently.

## D. Failure to object to the jury instruction

Humphrey contends trial counsel erred by permitting the trial court to improperly instruct the jury regarding the use of Brooks' unsworn statement as substantive evidence of his guilt. The jury was instructed as follows:

> Prior inconsistent statements are defined as statements made by the witness out of court which differ from his testimony during this trial. Prior inconsistent statements may be considered by you for two purposes. You may use them to impeach the capacity for truthfulness of the witness who made the inconsistent statements. *You may also consider the out-of-court statements as evidence in determining the guilt or innocence of the defendant of the crime charged.* The credibility of a witness may be attacked by introducing evidence that on some former occasion the witness made a statement, made a written statement, in former testimony testified, or acted in a manner inconsistent with his testimony in this case. It is inconsistent if the witness denied making the prior statement.

Evidence of this kind may be considered by you in deciding the weight to be given to the testimony of the witness.

Tr. at 394 (emphasis added). At the time of Humphrey's trial, this instruction mirrored the pattern jury instruction for prior inconsistent statements. See 2 Ind. Pattern Jury Instructions (Criminal) 12.19 (2d ed. 1991). However, prior to trial, the Indiana Rules of Evidence were adopted and this Court expressly overruled prior jurisprudence permitting the use of prior inconsistent statements as substantive evidence. See Modesitt, 578 N.E.2d at 654 (holding "the rule enunciated in Patterson [permitting the use of prior inconsistent statements as substantive evidence] and interpreted by the courts of this State is no longer the law of this State"); Ind. R. Evid. 801 (adopted effective Jan. 1, 1994). Thus, it was incorrect to inform the jury that it "may also consider the out-of-court statements as evidence in determining the guilt or innocence of the defendant of the crime charged." This was an incorrect statement of the law. Defense counsel was given the opportunity, yet failed to object to this instruction. The trial court explicitly asked trial counsel if he had any objection to the proposed, standard instruction and counsel answered in the negative. See R. at 427. "Had a proper objection been lodged to the instruction, the court would have been required to entertain it." Humphrey I, 680 N.E.2d at 840. Accordingly, Humphrey has shown that counsel performed deficiently by allowing the trial court to instruct the jury with an incorrect statement of the law.

For all the reasons set forth above we conclude Humphrey has satisfied the first prong of the two-part test articulated in Strickland v. Washington, namely Humphrey has shown "deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." McCary, 761 N.E.2d at 392 (citing Strickland, 466 U.S. at 687-88).

## II. Prejudice

Deficient performance notwithstanding, Humphrey must also satisfy the second prong of the Strickland test, namely, "the defendant must show prejudice: a reasonable probability (i.e. a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." McCary, 761 N.E.2d at 392 (citing

Strickland, 466 U.S. at 694).  In the context of the case before us, Humphrey must demonstrate that but for counsel's errors, there was a reasonable probability he would not have been convicted of murder.

The State asserts that Humphrey was not prejudiced by the admission of Brooks' unsworn statement as substantive evidence because "no objection would have prevented Brooks's statement from being admitted."  Br. of Appellee at 25 (citations omitted).  According to the State, "this is not a case where a proper objection would have completely prevented damaging evidence from reaching the jury; instead, a proper objection would have merely led to a limiting instruction about the potential use of that damaging evidence."  Id. (citation omitted).  But that is precisely the point.  Counsel's deficient performance allowed the jury to consider the only direct evidence identifying Humphrey as the shooter in determining his guilt to the very serious charge of murder.  Had counsel requested the appropriate admonishment the jury would have been precluded from considering Humphrey's alleged admission to the crime in rendering its decision.  And importantly, where the appellant's claim includes a sufficiency challenge, to resolve this issue on appeal, "we must exclude from our consideration any evidence that was introduced to impeach the credibility of a witness.  Such evidence is not a part of the substantive case."  Webster v. State, 413 N.E. 898, 901 (Ind. 1980).  Accordingly, evidence improperly considered by the jury for want of a limiting instruction is no less prejudicial than evidence presented which should have never been introduced in the first instance.  Both permit the jury to improperly determine guilt based information that should not be considered.  Even if Brooks' unsworn statement was properly admitted for impeachment purposes, counsel failed to limit the use of that statement to his client's detriment.

The case before us is not one "where the probable impact of the evidence on the jury is 'sufficiently minor so as not to affect the substantial rights of the parties'" because "the hearsay evidence is merely cumulative of other evidence properly admitted."  Cooley v. State, 682 N.E.2d 1277, 1282 (Ind. 1997) (quoting Fleener v. State, 656 N.E.2d 1140, 1142 (Ind. 1995)).  Instead, Brooks' unsworn statement was the *only* evidence identifying Humphrey as the shooter.  To suggest that the jury's decision was not impacted by this evidence ignores the trial court's instruction to the contrary.

The State also insists there is no prejudice because of statements Brooks made at trial that were admissible as substantive evidence and confirmed much of the representations Brooks made in his out-of-court unsworn written statement.[2]

The record shows that sometime prior to trial Brooks gave a sworn statement to Prosecutor Cummings. Although the statement was not introduced into evidence, portions were referenced during Brooks' direct examination during the State's case-in-chief. Relevant portions follow:

Q. [Deputy Prosecutor:] That day that you took . . , that Mr. Cummings had you testify under oath, across the hall, you told Mr. Cummings that this person named "Nano", that you knew by the street name of "Nano" was the person that was with you in your garage the night this fellow from Elwood was murdered, is that true?

A. [Brooks:] Yeah.

R. at 307.

Q. [Deputy Prosecutor:] On that day you recall Mr. Cummings asking you[,] "And what you saw lead you to believe that "Nano" shot somebody in that truck, is that right?" You recall answering, "Yeah" to that question? You recall that?

A. [Brooks:] Yeap.

R. at 313.

Q. [Deputy Prosecutor:] You recall when you testified under oath to Mr. Cummings when he asked you [the] question, "After Nano came back to your house, did he tell you anything that lead you to believe he shot that guy?". Your answer, "I think I ask." Question, "You asked him if [sic] shot him?". Your answer, "I ain't ask him. I ask him what was the noise and I think he told me he shot him, but you know, I don't believe him, you know.". You recall testifying to that?

---

[2] The State advances this argument for the first time on transfer. And it does so not in its Petition to Transfer, but for the first time at oral argument. This issue is waived. See State v. Holtsclaw, 977 N.E.2d 348, 350 (Ind. 2012) (finding waiver of appellant's challenge because "[a]lthough there was some discussion of the constitutional issue at oral argument, [appellee] did not raise it in his brief in the Court of Appeals, and it merited only two conclusory sentences in his response to the [appellant's] transfer petition"). Waiver notwithstanding, we address the State's claim which fails on the merits.

A. [Brooks:] Yeap.

* * *

Q. [Deputy Prosecutor:] Recall Mr. Cummings on that testimony asking you, "Further, did Nano tell you he shot him?". You answered, "Yeap.". You recall that?

A. [Brooks:] Yeah.

Q. [Deputy Prosecutor:] Recall further Mr. Cummings saying, "Okay, what words did he use?". Your answer, "Well, I ask him." His question, "What did you say?". And you answered, "I ask him what was the noise, uh, it was like I shot him. And I said like for real man. He like, 'yeah', you know. I am still thinkin' he bull[*******'], now quit lyin'. He's like, okay. You know that was it.". Did you testify to all that?

A. [Brooks:] Yeap.

R. at 321-22. Conceding that Brooks did not "explicitly" identify Humphrey as the shooter, the State asserts that by the foregoing exchange, "those dots are connected by other evidence that allowed the jury to make that connection without the written statement to do it." Oral Arg. Video Trans. at 20:31 – 20:38.

We observe that almost immediately after taking the stand, Brooks asserted that he had lied to Prosecutor Cummings about knowing "Nano" when he gave his sworn statement. Brooks also declared he did not recall everything that he initially said because he was just "makin' up stuff" when he had spoken with the prosecutor. R. at 306. And as the State continued to question Brooks about his sworn statement to Prosecutor Cummings, Brooks testified repeatedly that his statement was fabricated. "The burden was on the people not only to prove, beyond a reasonable doubt, the commission of the crime charged, but they were further required to prove in the same degree that defendant was the person who committed it. Where the conviction of a defendant rests upon an identification which is doubtful, vague, or uncertain and which does not produce an abiding conviction of guilt to a moral certainty, it should be reversed." Baker v. State, 138 N.E.2d 641, 647 (Ind. 1956) (internal citations omitted) (quoting People v. Gold, 196 N.E. 729, 732 (Ill. 1935)), disapproved on other ground by Davis v. State, 232 N.E.2d 867 (Ind. 1968).

13

More importantly, we disagree with the State's contention that the jury could infer Humphrey was the shooter. The following exchange is illuminating:

Q. [Deputy Prosecutor:] You recall when you testified to Mr. Cummings when Mr. Cummings asked you about Trondo Humphrey's approaching the truck. Mr. Cummings asked you, "What did you see him do?". Your answer, "He told me, 'There go a geek.' and he ran out there after him. I didn't see him run to the truck or nothin', I stayed in my own garage.". You recall testifying to that?

A. [Brooks:] Nope.

Q. [Deputy Prosecutor:] You don't recall making that statement?

A. [Brooks:] He ain't . . , Trondo name didn't never come up in it.

Q. [Deputy Prosecutor:] Okay. Do you recall referring to this person as Nano and making that statement?

A. [Brooks:] Yeah.

R. at 323. Further, as for the connection between "Nano" and Humphrey, Brooks answered, "Nope," to the question, "You ever hear Trondo Humphrey's referred [to] as "Nano." R. at 306. The deputy prosecutor followed-up: "Fact, you told Mr. Cummings on that date that you didn't know who Trondo Humphrey's was, didn't you?" to which Brooks responded, "Yeap." Tr. at 220.

On the record before us it is abundantly clear that the only evidence identifying Trondo Humphrey as the person committing the murder of Benjamin Laughlin was Brooks' out-of-court written statement improperly admitted at trial as substantive evidence.

We are also unpersuaded by the State's contention that "based on the significant similarities" between the testimony given by Sites and Smith, "the evidence firmly established that Humphrey shot Laughlin." Br. of Appellee at 28. As the State succinctly expressed during closing argument at trial:

There was very little by way of exhibits that was presented in this case. Didn't have a lot of physical evidence. We didn't have. . , didn't find finger prints, you

14

heard about that . . . we didn't find it.  Not unusual.  We didn't find a weapon.
We had it, [sic] you'd of seen it.  We didn't have one.  It's not all the unusual
either.  *We had some items of physical evidence, but they would be more
pertaining to the establishing the fact that in fact the crime occurred, rather than
tying one particular individual to that particular crime.*  So, there's very little
physical evidence that's, that's in existence in this case that we can put before
you.

R. at 444 (emphasis added).


Sites' testimony establishes that Laughlin was shot by a drug dealer in the alley behind
Brooks' garage during a drug deal gone bad.  His testimony merely confirmed that Humphrey
"closely fits" the description of the assailant.  See R. at 455 (State arguing in closing: "Mr. Sites
can't make an identification, but he gave us a description.  And a description that very *closely fits*
the defendant." (emphasis added)).


 Smith's testimony places Humphrey in the garage that evening and further demonstrates
that Humphrey was selling drugs in the alley as well.  However, there is simply no admissible
evidence that *Humphrey* possessed a gun that evening let alone that he shot Laughlin.   Absent
Brooks' unsworn hearsay statement, at best the testimony presented by Sites and Smith places
Humphrey at the scene on the night Laughlin was shot, giving him an opportunity to commit the
crime.


Even though Humphrey closely fit the description of the perpetrator, without Brooks'
unsworn written statement the evidence supporting that he was the shooter is entirely speculative
and circumstantial.  It is of course true that "a verdict may be sustained based on circumstantial
evidence alone if that circumstantial evidence supports a reasonable inference of guilt."
Hampton v. State, 719 N.E.2d 803, 807 (Ind. 1999).  But mere presence at the crime scene,
without more, cannot sustain a conviction.  Id.  Only where the defendant's presence is combined
with other facts and circumstances have we found a reasonable inference of guilt.  In this case,
"[t]he most that is shown is that appellant was in the general area when the killing occurred at
about the time the killing occurred. . . . Showing mere opportunity to commit the crime is not
sufficient."  Glover v. State, 255 N.E.2d 657, 659 (Ind. 1970) (finding "no evidence here from

15

which a reasonable jury could infer that appellant stabbed [the victim]" even where witness testified that defendant had fought with the victim that same night and defendant was seen walking in the direction in which the murder took place just minutes before the witness "noticed two people fighting . . . then noticed someone dragging something to the trash barrels behind the tavern" where the victim's body was discovered).

Counsel's errors, which permitted the jury to consider the only evidence identifying Humphrey as the shooter in determining his guilt or innocence, are sufficient to undermine our confidence in the verdict rendered in this case. In viewing the evidence without the inadmissible hearsay statements, we believe there is a reasonable probability the result of Humphrey's trial would have been different, namely Humphrey would not have been convicted of murder.

**Conclusion**

We conclude that petitioner has shown the evidence leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. We thus reverse the judgment of the post-conviction court and remand this cause for a new trial.

Rush, C.J. and David. J., concur.
Massa, J., concurs with separate opinion, in which Slaughter, J., concurs.

16

**Massa, J., concurring.**

Twenty-two years have passed since Benjamin Laughlin was murdered in 1995, but now the man convicted of killing him will get a new trial; an outcome caused by a perfect storm of error by all involved—the trial court, the prosecutor, and the defense—resulting in a collapse of the system. I fully concur with Justice Rucker's dispassionate legal analysis regarding ineffective assistance of counsel, but I find the remedy so regrettable and avoidable that I write separately to elaborate on the mistakes made and opportunities missed, and their impact on the question of laches.

The breakdown in this case begins with a situation not unusual in criminal proceedings: a witness identifying a defendant, then, for one reason or another not difficult to imagine, later recanting his statement. Here, it was Roosevelt Brooks' unsworn pretrial statement identifying Humphrey, and Brooks' subsequent denial at trial. The State admitted, as Exhibit L, Brooks' prior inconsistent statement. The defense objected, not as to hearsay, but foundation, and no admonishment was sought as to the statement's limited admissibility. This was the first mistake. Brooks' statement was the only evidence directly identifying Humphrey as the shooter and was damning to Humphrey's case.

Then as trial progressed, the prosecution and defense counsel were provided with a copy of the trial court's tentative final jury instructions. The instructions reiterated what was known as the <u>Patterson</u> rule. That rule, however, was overruled nearly six years before Humphrey was tried for murder by <u>Modesitt</u>.[1] <u>Modesitt</u> was undeniably the law at the time of trial. Yet when asked whether they had any objections, both replied they did not.[2] Thus, they gave the trial court

---

[1] <u>See</u> <u>Patterson v. State</u>, 263 Ind. 55, 324 N.E.2d 482 (1975) (holding an out-of-court statement not given under oath could be considered as substantive evidence so long as the declarant was available for cross-examination at trial); <u>see also</u> <u>Modesitt v. State</u>, 578 N.E.2d 649, 653–54 (Ind. 1991) (repudiating the "Patterson" rule and applying Federal Evidence Rule 801 instead. Indiana later adopted its own similar version of 801 in the Indiana Rules of Evidence in 1994, two years before Humphrey's trial).

[2] There has been no accusation of *knowingly* making or failing to correct the false statement of law in this case. But, it bears reminding that lawyers practicing in this State are bound by the Indiana Rules of Professional Conduct, particularly the requirement of candor toward the tribunal. <u>See</u> Rule 3.3(a)(1) ("A lawyer shall not knowingly: make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer"); <u>see also</u> Rule 3.3, comment 2 ("[A]lthough a lawyer in an adversary proceeding is not required to present an impartial exposition of the law or to vouch for the evidence submitted in a cause, the lawyer must not allow the tribunal to be misled by false statements of law or fact or evidence that the lawyer knows to be false").

permission to, in effect, offer the jury an "unlimiting" instruction, if you will.[3] All three were complicit in endorsing the incorrect statement, perhaps simply due to an outdated pattern jury instruction still inexplicably in use,[4] ignorance, or maybe out of zeal for a murder conviction.

At closing, defense counsel similarly argued to the jury:

> Prior inconsistent statements may be considered by you for two purposes. You may use [them] to impeach the capacity for truthfulness of the witness or witnesses who made the inconsistent statements. And boy, did we have them. You may also consider the out-of-court statements as evidence in determining the guilt or innocence of the defendant of the crime charged. That's the law, plain and simple, that's the instructions. You have to follow what . . ., follow what you're presented.

Tr. at 488–489. Despite being entitled to a limiting admonition, defense counsel repeated the misstatement of law, permitting the jury to consider out-of-court statements, like Brooks', for their truth.

Humphrey was subsequently convicted of murder, and sentenced to 60 years in prison. He directly appealed to this Court, which affirmed, while indicating several errors in his trial, including:

> The trial court explicitly asked Humphrey's counsel if he had any objection to the proposed instructions and counsel answered in the negative. Record at 427. Had a proper objection been lodged to the instruction, the court would have been required to entertain it. There is no claim of ineffective assistance of trial or appellate counsel raised in this appeal.

---

[3] "Prior inconsistent statements are defined as statements made by the witness out of court which differ from his testimony during this trial. Prior inconsistent statements may be considered by you for two purposes. You may use them to impeach the capacity for truthfulness of the witness who made the inconsistent statements. You may also consider the out-of-court statements as evidence in determining the guilt or innocence of the defendant of the crime charged." Tr. at 506.

[4] Indeed, as this Court noted in Humphrey's direct appeal, the "pattern instruction had not been changed to reflect Rule 801 and the demise of the *Patterson* rule in *Modesitt*." Humphrey I, 680 N.E.2d at 840. And we further reminded readers that Patterson, which was overruled years before, "does not reflect current law and should not be used in trials in this state." Id.

2

<u>Humphrey I</u>, 680 N.E.2d at 840. Not only does this statement identify the main issue in Humphrey's trial, it hints at the method by which Humphrey could obtain relief. Nevertheless, Humphrey did not petition for post-conviction relief until 15 years after his direct appeal—a delay that might suggest a successful laches defense for the State if adequately further developed.

The State sought to prove the affirmative defense of laches to bar Humphrey's petition. The State raised the issue in its pleadings, offered some little evidence at the post-conviction hearing, and even now continues to argue this issue in briefing on appeal. However, astonishingly, the State failed to include this issue in its proposed findings to the post-conviction court, which adopted the State's proposed findings and conclusions *verbatim*. In due course, Humphrey appealed and briefing proceeded. By order, the Court of Appeals remanded the case to the post-conviction court to amend its findings and conclusions to address the issue of laches.[5] Pursuant to the order, the post-conviction court made the requisite findings, concluding the State failed to carry its burden.

Laches is an equitable doctrine that bars consideration of the merits of a claim or right due to "neglect for an unreasonable or unexplained length of time, under circumstances permitting diligence, to do what in law should have been done." <u>Perry v. State</u>, 512 N.E.2d 841, 842 (Ind. 1987) (internal quotations omitted). "For laches to bar relief, the State must prove by a preponderance of the evidence, first, that the petitioner unreasonably delayed in seeking relief and, second, that the State has been prejudiced by the delay." <u>Id.</u> at 843. A petitioner "can seldom be said to have delayed unreasonably in seeking relief" absent knowledge of a defect or the means of seeking relief. <u>Id.</u> Direct proof of knowledge is not required, circumstantial evidence can suffice, but knowledge must be based on a showing of conscious indifference. <u>Id.</u> at 844-45. The State must "present some objective facts from which the court may draw a reasonable inference of knowledge"—inquiry notice alone is insufficient. <u>Id.</u> Knowledge may be inferred from facts such as repeated contact with the criminal justice system, consulting with attorneys, and incarceration in institutions with legal facilities. <u>Id.</u> at 844. "For post-conviction laches purposes, prejudice

---

[5] The Court of Appeals found that the post-conviction court failed to address the issue of laches in violation of Indiana Post-Conviction Rule 1(6), which provides the post-conviction court "*shall* make specific findings of fact, and conclusions of law on *all* issues presented . . ." (emphasis added).

exists when the unreasonable delay operates to materially diminish a reasonable likelihood of successful re-prosecution." Armstrong v. State, 747 N.E.2d 1119, 1120 (Ind. 2001).

It appears that the State offered little more than the fact that 15 years had elapsed since Humphrey's direct appeal, and the trial court heard testimony from defense counsel that he "[is] positive [he] never would have talked to [Humphrey]" about post-conviction relief. Post-Conviction Relief Tr. at 41–42. Further, the post-conviction court found that, although some evidence and witnesses were unavailable, their absence would not "significantly affect the State's ability to retry the case."[6] Findings of Fact and Conclusions of Law on Laches filed May 5, 2016 at 3–4 [hereinafter FFCL]. It is true that the mere passage of time without knowledge of a defect is insufficient to constitute laches, but that isn't all the State had in its arsenal. See Perry, 512 N.E.2d at 843 ("Unless a petitioner has knowledge of a defect in his conviction or of the means to seek relief from the conviction, he can seldom be said to have delayed unreasonably in seeking relief"). The problem is the State failed to deploy other arguments that would have allowed the post-conviction court to find laches. For instance, the opinion from Humphrey's direct appeal was admitted into evidence at the hearing, but the State made no argument about the framework it provided or that knowledge of remedies could be inferred from it. Similarly, the State made no arguments asserting the three ways such knowledge may be inferred, as described in Perry. See Perry, 512 N.E.2d at 844 (repeated contact with the criminal justice system, consulting with attorneys, and incarceration in institutions with legal facilities). Indeed, the post-conviction court pointed out this precise flaw: "Humphrey did not testify at the hearing on when he learned he could file a Petition for Post-Conviction Relief. The State must prove more than inquiry notice to show unreasonable delay. *Perry v. State*, 512 N.E.2d 841, 844 (Ind. 1987)." FFCL at 3 (emphasis in original). Moreover, the post-conviction court noted that the State's key witnesses were available for retrial, indicating the State "has not shown the passage of time has affected their memories or ability to testify at a retrial." FFCL at 4. In sum, the State could have made its case, but instead hung its hat on one fact that was insufficient by itself to prove unreasonable delay. The State also

---

[6] Regarding some of the evidence, the State may have additional evidentiary burdens at retrial due to the development of Confrontation Clause law, yet another potential issue that, with a better developed record, might have improved the State's case for laches.

attempted to prove prejudice by showing witnesses would be unavailable for retrial, but Humphrey's counsel was successful in rebuttal.[7]

While the State *now* offers many of these arguments on appeal, it is too late. The State has the burden of proving laches as an affirmative defense, thus the judgment regarding laches will be affirmed unless clearly erroneous. <u>Armstrong</u>, 747 N.E.2d at 1120. We review for sufficiency of the evidence, considering the evidence and reasonable inferences favorable to the judgment, neither reweighing the evidence nor assessing the credibility of witnesses. <u>Id.</u> Given this standard and the record before this Court, we are compelled to affirm the post-conviction court's determination that Humphrey's petition was not barred by laches. But make no mistake, being compelled to act is a far cry from being satisfied with the outcome, particularly when the outcome—retrial of a convicted murderer two decades later—can subject the criminal justice system to the dismayed contempt of survivors and the public writ large.

Slaughter, J., concurs.

---

[7] The following exchange occurred at the post-conviction hearing after testimony regarding the availability of certain witnesses:

| | |
|---|---|
| The Court: | Okay. What's the relevance of the witnesses that you talked about and presented evidence in regard to their locat[ion]? |
| [Public Defender]: | To show they're available. . . . |
| The Court: | Well, and what did you wish to accomplish with [the witnesses] now? |
| [Public Defender]: | Show [they are] available, Your Honor. To show… |
| The Court: | For what? |
| [Public Defender]: | [They are] available for retrial. The State - - the reason the State went through the business of trying to establish that certain were or were not available is, my understanding, is they're relying on a[n] affirmative defense . . . of laches. |
| The Court: | Okay. Thank you for clear[ing] that up. . . . |

Post-Conviction Relief Tr. at 63.