## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 14 2019, 6:05 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

J. Michael Sauer
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Steven A. Wright,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent*

March 14, 2019

Court of Appeals Case No.
18A-PC-1850

Appeal from the Elkhart Superior Court

The Honorable Teresa L. Cataldo, Judge

Trial Court Cause No.
20D03-1410-PC-40

**Vaidik, Chief Judge.**

# Case Summary

[1] In 2010, Steven A. Wright was convicted of molesting his girlfriend's seven-year-old daughter, and the trial court sentenced him to thirty-five years. He later filed a petition for post-conviction relief arguing that his trial and appellate attorneys rendered ineffective assistance, and the post-conviction court denied relief. We affirm.

# Facts and Procedural History

[2] In early 2009, Jennifer Linville and her three children, including her seven-year-old daughter K.M., were living with Jennifer's grandma. Jennifer was separated from her husband, who was attending truck-driving school in Texas. In late February 2009, Jennifer started dating twenty-two-year-old Wright, whom she knew from her childhood. Trial Tr. p. 424. Wright visited Jennifer at her grandma's house "[e]very night." *Id.* at 386. One weeknight in the middle of March, Jennifer and Wright went out drinking at a bar. Jennifer also used methamphetamine and marijuana that night. According to Jennifer, this was the first night that Wright spent the night with her. When Jennifer and Wright returned to her grandma's house around midnight, Wright stayed up for a little bit and Jennifer went to bed. When Jennifer entered her bedroom, she saw K.M. sleeping on the floor. Intoxicated, Jennifer fell asleep.

[3] When Jennifer woke up the next morning, K.M. was in bed with her and Wright was sleeping on the floor where K.M. had been. Jennifer woke up

K.M. for school. As K.M. was getting ready for school, she told her mother that her underwear was inside out.

[4] About a month later, on April 11, Jennifer and Wright were watching television in her bedroom when K.M. walked in, approached Wright, and said, "Do you know how you did something wrong to me? Well, I'm going to do it to you." *Id.* at 409. K.M. then accused Wright of touching her "private parts," pointing to her vagina to illustrate. *Id.* Wright denied touching K.M. Stunned, Jennifer did not say or do anything.

[5] The next day, Jennifer asked K.M. about her allegation. Jennifer was "bawling" at the time. *Id.* at 416. K.M. kept telling her mother that "it was going to be okay" and wiped away her mother's tears. *Id.* "All [K.M.] would tell [Jennifer] was that [Wright] touched her private area." *Id.* A family member reported the molestation to the police several days later, and a detective interviewed Jennifer on April 17. During the interview, Jennifer told the detective what K.M. had told her:

> [A]t one point in time, [K.M.] said that [Wright] touched over clothes, and the next time she said that he put his hands in her pants, and then she woke up and her pants were backwards. So I went along with the story that he just touched her, because that's what she's sticking to now.

P-C Ex. 5 pp. 5-6. Although Jennifer did not tell the detective about her drug use, she did tell him that she did not know if K.M.'s allegation was "true" as K.M. was "going through this time with, I'm not allowed to talk to no guys or

nothing. Her dad is her daddy, because we're split up." *Id.* at 6. Jennifer told the detective that she even asked her grandma "what if [K.M.'s] just doing this because she doesn't want me with [Wright]?" *Id.* Jennifer then told the detective about an incident where an older neighbor boy played "a sex game" with her younger son, and K.M. started asking Jennifer if her brother was ever going to be allowed to see that neighbor boy again. *Id.* at 6-7. The detective asked Jennifer if K.M. would make up the allegation, and Jennifer responded that K.M. was "very manipulative." *Id.* at 9. But when the detective told Jennifer that that "was not what you told me before," Jennifer retreated, saying "I've never, ever, ever had any problems with her lying about this, but just since this incident, [K.M.] has been kind of real funny about it." *Id.*

[6] In June, the State charged Wright with Class A felony child molesting (deviate sexual conduct) and Class C felony child molesting (fondling or touching). A jury trial was held in February 2010. K.M. and Jennifer were the only two witnesses to testify at trial. K.M., who had since turned eight years old, testified that after her mother fell asleep, Wright entered the bedroom and got in bed with her mother for a little bit. K.M. was "awake," but her eyes were "closed." Trial Tr. pp. 346-47. Wright then got out of bed, walked over to K.M., "crouched down," and started rubbing her belly with his hand. *Id.* at 343. Wright then started "going down and down and then under." *Id.* K.M. clarified that "[a]t first he was on top, then he started going under my clothes." *Id.* at 343-44. Wright also pulled K.M.'s underwear down to her ankles. *Id.* at 349. Wright then "rubbed and push[ed]" his finger "in circles" under K.M.'s

clothes and "between [her] private." *Id.* at 344. K.M. described her "private" as where she "pee[s]." *Id.* K.M. said when she opened her eyes, Wright "swoop[ed] his hands behind his back." *Id.* at 347. K.M. gave him a "mad face" and then "took his spot on the bed." *Id.* at 348. Trial counsel cross-examined K.M., focusing on whether she was awake or asleep when she was touched. Trial counsel did not ask K.M. what she told her mother about the incident.

[7] Jennifer testified about the April 11 incident, when K.M. walked into her bedroom and accused Wright of touching her inappropriately. Jennifer explained that she did not contact the police because she was "on meth" and afraid that "CPS would get involved and take [her] kids away." *Id.* at 418. She also testified that before the incident, K.M. had not expressed any concern about Wright being at the house or that she was angry at Wright because he was "taking Daddy's place." *Id.* at 387. Defense counsel cross-examined Jennifer but did not ask what she told the detective during her interview, namely, that (1) she did not call the police because she did not know if K.M. was telling the truth and (2) K.M. was going through a phase where she did not want Jennifer talking to any men besides "her daddy."

[8] During closing argument, trial counsel highlighted the inconsistencies in K.M.'s testimony and speculated that K.M. made up the allegations because she was crying out for help. *Id.* at 465 ("Sometimes when kids say outrageous things or things that are not quite true, they are asking for help. They know their situation is intolerable. This little girl was watching her mother go to hell in a

hand basket."). The jury found Wright guilty as charged. At the sentencing hearing, the trial court identified two mitigators: (1) Wright's "young age" and (2) his lack of felony convictions. Appellant's Trial App. Vol. I p. 18. The trial court identified two aggravators: (1) "a pattern of continuing criminal conduct" based on Wright's eight juvenile adjudications and one misdemeanor conviction and (2) Wright occupied a position of trust with K.M., which he abused by molesting her. *Id.* The trial court sentenced Wright to thirty-five years for the Class A felony (sentencing range of twenty to fifty years, with an advisory sentence of thirty years, Ind. Code § 35-50-2-4(a)) and five years for the Class C felony (sentencing range of two to eight years, with an advisory sentence of four years, Ind. Code § 35-50-2-6(a)), to be served concurrently.

[9]     Wright appealed to this Court, arguing that K.M.'s testimony was incredibly dubious (based, in part, on contradictions in K.M.'s testimony regarding whether she was awake or asleep when the touching occurred) and therefore insufficient to support his convictions. We found that the evidence was sufficient:

> K.M. testified unequivocally that Wright molested her. Asked whether "anybody ever touched a part of [he]r body that shouldn't be touched," K.M. identified Wright and described in detail the manner in which Wright had first touched her over her clothes, then lifted her dress, moved her panties, and touched her vagina with his index finger. The record also reveals that at trial, K.M. demonstrated her ability to distinguish between truth and lies; characterized lying as "[b]ad" and truth-telling as "[g]ood"; and communicated that she understood the significance of a sworn oath to tell the truth.

*Wright v. State*, No. 20A03-1004-CR-233 (Ind. Ct. App. Mar. 28, 2011). Wright also argued that the trial court committed fundamental error in instructing the jury on reasonable doubt. We found no fundamental error but encouraged the trial court to use "may" instead of "should" in its reasonable-doubt instruction. *Id.*

[10] In 2014, Wright filed a pro se petition for post-conviction relief, which was amended by counsel in 2017. Wright alleged that his trial and appellate attorneys rendered ineffective assistance. Specifically, Wright alleged that his trial counsel was ineffective for "fail[ing] to present to the jury evidence that conflicted with and impeached the testimony of State's witnesses" and that his appellate counsel was ineffective for failing to argue that the trial court abused its discretion by finding as an aggravator that Wright was in a position of trust with K.M. Appellant's P-C App. Vol. II pp. 85-86.

[11] Jennifer and Wright's appellate counsel testified at the post-conviction hearing, but Wright's trial counsel did not testify, as he had passed away in 2010.[1] Wright's attorney asked Jennifer if she remembered telling the detective that "at first K.M. said that [Wright] touched her over her clothes," and Jennifer said

---

[1] Wright argues that the post-conviction court "erroneously inferred that the deceased trial counsel would have disputed the allegations." Appellant's Br. p. 16. He asserts that the missing-witness inference should not apply where, as here, the attorney is deceased. While it is true that the post-conviction court recited the principle that "[w]hen counsel does not testify at the post conviction hearing, the court may infer that counsel would not have corroborated the allegations of ineffectiveness," Appellant's P-C App. Vol. II p. 158 (citing *Culvahouse v. State*, 819 N.E.2d 857, 863 (Ind. Ct. App. 2004), *trans. denied*), the court did so in the context of Wright's argument that trial counsel was ineffective for failing to adequately prepare for trial. *Id.* Wright, however, does not raise this argument on appeal. In other words, the post-conviction court did not apply the missing-witness inference to the arguments that Wright raises on appeal.

no. P-C Tr. p. 13. Wright's attorney then showed Jennifer a transcript of the interview.[2] After Jennifer reviewed the transcript, the following colloquy occurred:

> Q So after reading that . . . do you remember telling [the detective] that at first K.M. said that [Wright] touched her over her clothes?
>
> A I do, yes.
>
> Q And then the next time K.M. talked to you about it, she said that [Wright] had put his hands in her pants.
>
> A Yes.
>
> Q And by the time you talked to [the detective], on April 17th, during that interview you told him that K.M. was sticking to her original story that [Wright] had just touched over her clothes.
>
> A Yes.
>
> Q So at least over those first six days, K.M. . . . was giving you inconsistent stories.

---

[2] Jennifer's April 2009 interview with the detective was videotaped. A transcript of the interview was later made for use at the January 2018 post-conviction hearing. P-C Tr. pp. 13-15.

A      **No.  She was . . . telling me that he had touched her over the clothes, but she wasn't telling me the whole exact story.**

*Id.* at 16 (emphasis added).

[12]   Wright's attorney then asked Jennifer why she did not report the molestation to the police.  Consistent with her trial testimony, Jennifer responded that she did not call the police because she was using methamphetamine and afraid that CPS would take her children away.  Wright's attorney then asked Jennifer if she gave the detective a different reason, and Jennifer said she did not remember.  After reviewing the transcript again, Jennifer acknowledged that she told the detective that she did not report the molestation because she "didn't know if [K.M.'s allegation] was true or not and [she] really didn't want it to be true."  *Id.* at 17.  Jennifer also acknowledged telling the detective that one reason she did not know if K.M.'s allegation was true was "because K.M. didn't want [Jennifer] to even talk to any guys that might take [her father's] place."  *Id.* at 18.  Likewise, Jennifer admitting asking her grandma if K.M. made up the allegation because she did not want her to be with Wright.  *Id.* Finally, Jennifer admitted that she told the detective that K.M. was "very manipulative."  *Id.*  However, Jennifer said she did not know why she told the detective that because K.M. "was not a manipulative child."  *Id.* at 23.  Jennifer admitted lying when she told the detective that K.M. was manipulative.  *Id.* (in response to the State's question of whether she lied when she told the detective

that K.M. was manipulative, Jennifer answered "No.  I don't – it's not a—**I mean yeah, she wasn't manipulative**" (emphasis added)).

[13] The post-conviction court denied relief.  Wright now appeals.

# Discussion and Decision

[14] A defendant who files a petition for post-conviction relief has the burden of establishing the grounds for relief by a preponderance of the evidence.  *Hollowell v. State*, 19 N.E.3d 263, 268-69 (Ind. 2014).  If the post-conviction court denies relief, and the petitioner appeals, the petitioner must show that the evidence leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court.  *Id.* at 269.

[15] Wright contends that the post-conviction court should have granted him relief because his trial and appellate attorneys rendered ineffective assistance.  When evaluating such a claim, Indiana courts apply the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984): whether counsel performed deficiently and whether that deficient performance prejudiced the defendant.  *Humphrey v. State*, 73 N.E.3d 677, 682 (Ind. 2017).  An attorney's performance is deficient if it falls below an objective standard of reasonableness—if the attorney committed errors so serious that it cannot be said that the defendant had "counsel" as guaranteed by the Sixth Amendment.  *Id.*  A defendant has been prejudiced if there is a reasonable probability that the case would have turned out differently but for counsel's

errors. *Id.*; *see also Middleton v. State*, 72 N.E.3d 891 (Ind. 2017). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Middleton*, 72 N.E.3d at 891-92. The standard of review for a claim of ineffective assistance of appellate counsel is the same as for trial counsel. *Ben-Yisaryl v. State*, 729 N.E.2d 102, 106 (Ind. 2000), *reh'g denied*.

# I. Trial Counsel

Wright first contends that his trial counsel was ineffective for failing to impeach certain parts of K.M.'s and Jennifer's testimony. The method of impeaching witnesses is a tactical decision and a matter of trial strategy that does not amount to ineffective assistance. *Kubsch v. State*, 934 N.E.2d 1138, 1151 (Ind. 2010).

## A. Impeach K.M.

[16] Wright first argues that his trial counsel should have impeached K.M.'s testimony that Wright touched her under her clothes (which was the basis of the Class A felony child-molesting conviction) with her prior statement to her mother that Wright "just touched her over her clothes." Appellant's Br. p. 19. It is well established that a prior inconsistent statement may be used for impeachment purposes—that is, not to prove the truth of the matter asserted in the prior statement, but rather to persuade the trier of fact that the witness should not be believed because her story differed in the past. *Martin v. State*, 736 N.E.2d 1213, 1217 (Ind. 2000); 12 Robert L. Miller, Jr., Indiana Practice, *Indiana Evidence* § 613.101 (4th ed. 2016). The prior inconsistent statement is

admissible for the limited purpose of impeachment, not as substantive evidence. *See Humphrey*, 73 N.E.3d at 685; 12 Miller, § 613.101.

[17]     The evidence shows that during Jennifer's April 17, 2009 interview with the detective, she relayed what K.M. had told her since first revealing the molestation on April 11: "**[A]t one point in time**, [K.M.] said that [Wright] touched over clothes, and **the next time** she said that he put his hands in her pants, and then she woke up and her pants were backwards."  P-C Ex. 5 pp. 5-6 (emphases added).  Wright interprets Jennifer's statement to mean that K.M. originally claimed that Wright **only** touched her over her clothes but later changed her story to be more damaging, that is, to say that he touched her under her clothes.  Even assuming that K.M.'s original report to her mother was inconsistent with her trial testimony that Wright first touched her over her clothes and then moved under her clothes, Jennifer testified at the post-conviction hearing that K.M. did not give "inconsistent stories" but rather "was . . . telling [her] that [Wright] had touched her over the clothes, but she wasn't telling me the whole exact story."  In other words, K.M. slowly let out the story over the course of those six days.  Given K.M.'s age of seven at the time of the molestation and her age of eight at trial, trial counsel no doubt had to make strategic decisions about how best to cast doubt on K.M.'s testimony.  *See* Trial Tr. p. 464 (during closing argument, trial counsel admitted as much: "If you are dealing with children from a defense attorney standpoint, you have got to be doggone careful.  I do not believe I was rude in any way, shape or form . . . to that child.").  Trial counsel did so by pointing out inconsistencies in K.M.'s

testimony regarding whether she was awake or asleep when the touching occurred. Because it is not uncommon for child-molesting victims to slowly reveal what happened to them, we find that it was reasonable trial strategy for trial counsel not to ask eight-year-old K.M. if she originally told her mother that Wright only touched her over her clothing and later told her that Wright touched her under her clothing. Trial counsel was not deficient for not impeaching K.M. in this manner.

## B. Impeach Jennifer

[18] Wright next argues that his trial counsel should have impeached Jennifer's "deceptively incomplete" testimony that (1) she did not call the police because she was "on meth" and afraid that CPS would take her children away and (2) K.M. had not expressed any concern about Wright being at the house or that she was angry at Wright for "taking Daddy's place." Appellant's Br. p. 13. Wright points out that contrary to her trial testimony, Jennifer told the detective that (1) she did not call the police because she did not know if K.M. was telling the truth and (2) K.M. was going through a phase where she did not want Jennifer talking to any men besides "her daddy."

[19] Even assuming that trial counsel was deficient for failing to impeach Jennifer on these points, Wright cannot establish prejudice. Jennifer's prior statements to the detective would not have been admissible as substantive evidence at trial. Rather, they would have been admissible to prove that Jennifer—not K.M.—

should not be believed because her story differed in the past.[3]  Although Jennifer's credibility was important, Jennifer was not a witness to the molestation, as she was passed out at the time.  In addition, Jennifer's credibility was already damaged, as the evidence showed that she was using methamphetamine at the time of these events and did take any action when her daughter told her that Wright had touched her inappropriately.  *See* Trial Tr. p. 423 (Jennifer admitting that she did not "handle[] this in an appropriate manner that had been in the best interest" of K.M.).  Moreover, as we found on direct appeal, K.M. "testified unequivocally that Wright molested her."  Jennifer corroborated some aspects of K.M.'s testimony.  That is, Jennifer testified that when she woke up the next day, K.M. was in bed with her and Wright was sleeping on the floor where K.M. had been.  Jennifer also testified that K.M. told her that her underwear was inside out.  Based on these things, Wright has not established a reasonable probability that the case would have turned out differently but for his trial counsel's alleged errors in not impeaching Jennifer on these points.

## II. Appellate Counsel

[20]  Wright next contends that his appellate counsel was ineffective for failing to argue that the trial court abused its discretion in identifying as an aggravator

---

[3] Wright argues that the State opened the door to Jennifer's prior statements to the detective.  Even assuming that the State opened the door to the statements, they would have been admissible for impeachment purposes only.

that he violated a position of trust. Wright argues that this issue was "clearly stronger than any issues argued by appellate counsel." Appellant's Br. p. 31.

[21] To show that appellate counsel was ineffective for failing to raise an issue on appeal thus resulting in waiver of the issue for collateral review, the defendant must overcome the strongest presumption of adequate assistance, and judicial scrutiny is highly deferential. *Reed v. State*, 856 N.E.2d 1189, 1195 (Ind. 2006). To evaluate the performance prong when appellate counsel has waived issues, we apply the following test: (1) whether the unraised issues are significant and obvious from the face of the record and (2) whether the unraised issues are "clearly stronger" than the raised issues. *Id.* Ineffective assistance is very rarely found in cases where a defendant asserts that appellate counsel failed to raise an issue on direct appeal because the decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel. *Id.*

[22] Wright first notes that the trial court's sentencing statement contains an error. The trial court found as follows: "The court notes that the defendant was the caregiver for his victim. As such, he occupied a position of trust with regard to this child, and he violated that position of trust by molesting her." Appellant's Trial App. Vol. I p. 18 (judgment of conviction); *see also* Trial Tr. p. 505 (oral sentencing statement). Wright argues that he was not K.M.'s caregiver. We agree that the evidence does not show that Wright was K.M.'s caregiver. Notwithstanding this error, the evidence supports the position-of-trust aggravator.

[23]   The position-of-trust aggravator is frequently found by sentencing courts where an adult has committed an offense against a minor and there is at least an inference of the adult's authority over the minor. *Rodriguez v. State*, 868 N.E.2d 551, 555 (Ind. Ct. App. 2007). Such is the case here. That is, Jennifer began dating Wright, whom she had known for thirteen years, in late February 2009. Wright visited Jennifer "[e]very night." Trial Tr. p. 386. K.M. lived with Jennifer, as K.M.'s father was attending truck-driving school in Texas at the time. The molestation happened sometime in mid-March, when Wright was spending the night with K.M.'s mother. This evidence supports that Wright was in a position of trust with K.M. *See Hines v. State*, 856 N.E.2d 1275, 1280-81 (Ind. Ct. App. 2006) (finding that the defendant was in a position of trust with the victim, who was spending the night with the defendant's daughter at the time of the molestation), *trans. denied*. Because the evidence supports this aggravator, this issue is not "clearly stronger" than the issues that appellate counsel raised on appeal. Accordingly, appellate counsel was not ineffective for failing to raise this issue.[4] We therefore affirm the post-conviction court.

---

[4] Wright also argues that appellate counsel was ineffective for failing to argue that his thirty-five-year sentence was inappropriate. Wright's argument on this issue, however, is conditioned on the position-of-trust aggravator being found invalid. *See* Appellant's Br. p. 36 ("**Considering that one aggravating factor was not supported by the record**, the other was of marginal importance, and the two mitigating factors were characterized by the trial court as 'significant,' a challenge to the appropriateness of Wright's 35-year sentence . . . [was] clearly stronger than the issues that were argued." (emphasis added)); *see also id.* at 34 (in addressing the nature of the offense, Wright argued: "But Wright was not in a position of trust with K.M., as the trial court erroneously found."). Because the record supports the position-of-trust aggravator, we do not address this argument.

Affirmed.

Mathias, J., and Crone, J., concur.