

I N T H E

# Court of Appeals of Indiana

Carlos Martin Francisco,

*Appellant-Petitioner*



FILED

Dec 18 2025, 9:31 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

State of Indiana,

*Appellee-Respondent*

December 18, 2025

Court of Appeals Case No.
25A-PC-1688

Appeal from the Cass Superior Court

The Honorable James K. Muehlhausen, Judge

Trial Court Cause No.
09D01-2403-PC-2

**Opinion by Judge Bailey**
Judges Tavitas and Kenworthy concur.

**Bailey, Judge.**

# Case Summary

[1] Carlos Martin Francisco appeals the post-conviction court's denial of his petition for post-conviction relief. Francisco raises one issue for our review, namely, whether the court erred when it denied his petition. We affirm.

# Facts and Procedural History

[2] Francisco came to the United States from Guatemala in 2011, and he became a legal permanent resident the same year. On August 13, 2020, the State charged Francisco with sexual battery, as a Level 6 felony. Thereafter, Francisco, represented by an attorney ("Trial Counsel"), entered into a plea agreement. Pursuant to that agreement, Francisco agreed to plead guilty to battery, as a Level 6 felony, in exchange for the State dismissing the charge of sexual battery. The parties also agreed to a sentence of 912 days suspended to probation. The plea agreement also contained a provision that provided that, if the defendant is not an American citizen, he acknowledges "that pleading guilty to a crime may affect his immigration status or result in deportation from [the] United States." Ex. at 4.

[3] At a guilty plea hearing, the trial court asked Francisco if he understood that his guilty plea "could adversely affect his resident status and result in his deportation," to which Francisco replied: "yes." Appellant's App. Vol. 2 at 101. The trial court then accepted Francisco's plea and entered judgment of

conviction accordingly. Following his conviction, Francisco was detained by Immigration and Customs Enforcement ("ICE") on October 2, 2023.

[4] On March 14, 2024, Francisco filed a petition for post-conviction relief and alleged that he had not entered into the guilty plea knowingly or voluntarily because he was not aware of the possible immigration consequences and that Trial Counsel had rendered ineffective assistance because Trial Counsel had failed to advise him of "the risk of deportation on a permanent basis." *Id*. at 13. In particular, Francisco alleged that his battery conviction was an aggravated felony under 8 U.S.C. § 1101(a)(43)(F) and that a conviction for an aggravated felony will "cause [a legal permanent resident] to be removable from the United States" and "bar him from virtually all forms of immigration relief." *Id*. at 80. Francisco argued that Trial Counsel had a duty to "affirmatively advise him of the specific immigration consequences" of his plea. *Id*. at 82 (bold removed). He then contended that his plea was "constitutionally defective" because Trial Counsel had failed to advise him of the consequences he faced such that "he had no knowledge of the specific immigration consequences to entering a guilty plea in this case" and that his plea "was not knowing, intelligent, and voluntary[.]" *Id*. at 86. And he maintained that a "statement that a plea 'may' have immigration consequences does not and cannot provide sufficient notice of the clear adverse immigration consequences in this case." *Id*. at 88.

[5] The court held a hearing on Francisco's petition on January 27, 2025. During the hearing, Trial Counsel testified that he does not give immigration advice because he does not "really have the expertise to do that" but that he "would

have likely referred" Francisco to an immigration lawyer. Tr. Vol. 2 at 41. Trial Counsel also testified that he negotiated a plea agreement that would not require Francisco to register as a sex offender. He further testified that he reviewed the terms of the plea with Francisco, including that "his plea of guilty could have immigration consequences including deportation[,]" on at least two occasions. *Id*. at 46. But Trial Counsel testified that he would not have advised Francisco that "he would definitely be at risk of deportation[.]" *Id*. at 47. Trial Counsel additionally testified that he was "comfortable that [Francisco] understood" the term of the plea agreement "which reference[d] the possible immigration consequences of a conviction." *Id*. at 52. And he testified that he informed Francisco "that a felony conviction is likely to result in a negative immigration consequence including deportation." *Id*. at 64.

[6] Following the hearing, the post-conviction court found that Trial Counsel had rendered effective assistance because counsel had "reviewed the Plea Agreement at least two times" and had advised Francisco that his plea could adversely affect his immigration status. Appellant's App. Vol. 2 at 101. The court also found that Francisco had entered into his plea knowingly. Accordingly, the court denied his petition for post-conviction relief. This appeal ensued.

## Discussion and Decision

[7] Francisco appeals the post-conviction court's denial of his petition for post-conviction relief. As our Supreme Court has stated:

> "The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence." *Campbell v. State*, 19 N.E.3d 271, 273-74 (Ind. 2014). "When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment." *Id*. at 274. In order to prevail on an appeal from the denial of post-conviction relief, a petitioner must show that the evidence leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Weatherford v. State*, 619 N.E.2d 915, 917 (Ind. 1993). Further, the post-conviction court in this case entered findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). Although we do not defer to the post-conviction court's legal conclusions, "[a] post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (internal quotation omitted).

*Humphrey v. State*, 73 N.E.3d 677, 681-82 (Ind. 2017).

[8] Francisco argues that the court erred when it denied his petition for post-conviction relief because he received ineffective assistance of counsel and because he did not knowingly, voluntarily, and intelligently enter into the plea agreement. We address each argument in turn.

**Ineffective Assistance of Counsel**

[9] Francisco first asserts that he received ineffective assistance from Trial Counsel. When evaluating a defendant's claim for ineffective assistance of counsel,

> we apply the well-established, two-part *Strickland* test. *Humphrey*, 73 N.E.3d at 682. The defendant must prove: (1) counsel

rendered deficient performance, meaning counsel's representation fell below an objective standard of reasonableness as gauged by prevailing professional norms; and (2) counsel's deficient performance prejudiced the defendant, i.e., but for counsel's errors the result of the proceeding would have been different. *Ward v. State*, 969 N.E.2d 46, 51 (Ind. 2012) (citing *Strickland* [*v. Washington*, 466 U.S. 668, 687, (1984)]. The *Strickland* standard is not limited to the trial or appellate phases in criminal proceedings, but also applies when defendants allege ineffective assistance during the guilty plea phase. *Segura v. State*, 749 N.E.2d 496, 500-01 (Ind. 2001). *See also Padilla v. Kentucky*, 559 U.S. 356, 373, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010) ("[W]e have long recognized that the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel.").

*Bobadilla v. State*, 117 N.E.3d 1272, 1280 (Ind. 2019).

[10] Here, Francisco alleges that his trial counsel was ineffective for failing to advise him that his plea agreement would result in his deportation. Specifically, he contends that it is "abundantly clear" that his plea was for an "aggravated felony" under federal law, which "carries significant adverse immigration consequences[.]" Appellant's Br. at 12. And, as a result, he maintains that his counsel had a duty to advise him of the "*specific* immigration consequences" and not just that he could face consequences. *Id*. (emphasis in original).

[11] To support his argument, Francisco relies on the Supreme Court's decision in *Padilla v. Kentucky*. In that case, Padilla, a lawful permanent resident, was charged with transporting a large amount of marijuana. 559 U.S. at 359. Prior to pleading guilty, Padilla's attorney not only failed to advise him of the

possible immigration consequences but specifically told him that he "'did not have to worry about'" it. *Id*. (quoting *Commonwealth v. Padilla*, 253 S.W.3d 482, 482 (Ky. 2008)). Padilla relied on that advice and entered into the agreement. The Supreme Court held the "weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation." *Id*. at 367. The Court also held that, "[i]n the instant case, the terms of the relevant immigration statute are succinct, clear, and explicit" such that Padilla's "counsel could have easily determined that his plea would make him eligible for deportation[.]" *Id*. at 368. Thus, the Court found that Padilla had received ineffective assistance when his counsel failed to advise him of the risk of deportation.

[12]    However, the Court also noted that:

> Immigration law can be complex, and it is a legal specialty of its own. Some members of the bar who represent clients facing criminal charges, in either state or federal court or both, may not be well versed in it. There will, therefore, undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain. The duty of the private practitioner in such cases is more limited. When the law is not succinct and straightforward . . ., a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear.

*Id*. at 369 (footnote omitted). On appeal, Francisco contends that the deportation consequence of his guilty plea was clear based on federal statutes

and case law and that his attorney was ineffective for failing to advise him that he would get deported by pleading guilty.

[13] However, the record is clear that Francisco's counsel advised him on multiple occasions that his guilty plea could result in his deportation. Indeed, the plea agreement itself contains a warning "that pleading guilty to a crime may affect his immigration status or result in deportation from [the] United States." Ex. at 4. Further, Trial Counsel testified that he discussed the terms of the plea with Francisco, including the term regarding the deportation possibility, "on at least two occasions." Tr. Vol. 2 at 46. Trial counsel also testified that he informed Francisco that "a felony conviction is likely to result in a negative immigration consequence including deportation." *Id.* at 64. And he testified that he was "comfortable" that Francisco "understood" the risk. *Id.* at 52. As such, it is clear that Trial Counsel advised Francisco that his guilty plea carried a risk of deportation.

[14] Still, Francisco contends that Trial Counsel was required to warn him that he "would" be deported, not that he merely "could" be. However, we first note that nothing in *Padilla* requires an attorney to do anything more than warn a client about possible consequences. Rather, the Court simply stated that the "weight of prevailing professional norms supports the view that counsel must advise her client *regarding the risk* of deportation." *Padilla*, 559 U.S. at 367 (emphasis added). Stated differently, an attorney must merely warn a client about the risk of deportation, not inform a client that he will be deported.

Further, as Trial Counsel has no control over the actions of ICE, Trial Counsel could not definitively inform Francisco that ICE would or would not take any specific action in any scenario. The best Trial Counsel could do is inform Francisco, or any other similarly situated client, that he risks ICE taking action, including deportation, by pleading guilty. And that is exactly what Trial Counsel did here. Because Trial Counsel accurately informed Francisco that he faced possible consequences, including deportation, Trial Counsel did not render deficient performance. The post-conviction court did not err when it concluded that Francisco received effective assistance from his trial counsel.

## Voluntariness of Plea

Francisco next contends that the court erred when it denied his petition for post-conviction relief because his plea was not voluntary, intelligent, or knowing. "On review of a guilty plea, we look at all the evidence before the post-conviction court." *Harris v. State*, 762 N.E.2d 163, 166 (Ind. Ct. App. 2002), *trans. denied*. "If the evidence exists to support the court's determination that the guilty plea was voluntary, intelligent[,] and knowing, we will not reverse." *Id*.

Francisco specifically contends that his plea was not voluntary, intelligent, and knowing because he "had no knowledge of the specific immigration consequences to entering a guilty plea in this case[.]" Appellant's Br. at 14. He maintains that trial counsel "only warned" him that his "plea *could* have immigration consequences, and that this clearly and unambiguously would

result in the death-knell to his" status and ability to remain in the country. *Id*. at 15 (emphasis in original).

[18] However, again, the record demonstrates that Francisco was warned on several occasions that he faced the possibility of being deported if he pleaded guilty. In particular, the plea agreement itself included a warning that he could be deported, Trial Counsel went over that provision with Francisco on at least two occasions, Trial Counsel warned Francisco that he could be deported, and the trial court warned him that he could be deported. The evidence before the post-conviction court demonstrates that Francisco was aware that deportation was a possible consequence to his guilty plea.

[19] Again, to the extent he contends that he should have been warned that he "would" be deported, neither the trial court nor Trial Counsel had any control over the actions that ICE may or may not take, and neither could advise Francisco that ICE would or would not take any specific actions. Francisco has failed to convince us that the evidence, taken as a whole, leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. The post-conviction court did not err when it concluded that Francisco's plea was knowing, intelligent, and voluntary.

## Conclusion

[20] The post-conviction court did not err when it concluded that Francisco received effective assistance or when it concluded that his plea was knowing, intelligent,

and voluntary. The court therefore did not err when it denied his petition for post-conviction relief.

[21] Affirmed.

Tavitas, J., and Kenworthy, J., concur.

ATTORNEY FOR APPELLANT

David Faherty
National Immigrant Justice Center
Chicago, Illinois

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Ellen H. Meilaender
Supervising Deputy Attorney General
Indianapolis, Indiana